March 18th, 1817, the Judges delivered their opinions.
Judge Coalter.
Id this case, the Appellant, having purchased of the Appellee a Lot of ground in the city of Richmond, for the price of $7000, payable at the expiration of ten years with interest from the date, to be paid annually, and, in default thereof, that the principal sum should, on such default, be due and demandable, as appears by the Bond, executed at the time, he also executed a Deed of Trust, on the Lot so purchased, to secure the payment. This Deed recites that it is to secure the payment of $7000, a debt due to the Appellee, on the 1st day of January, 1824; with legal interest from the 1st day of January, 1814 : and, in declaring the trust, and the objecls of it, it has reference to the Bond aforesaid, and provides, that, if the Appellant shall fail to pay the legal interest on the 1st day of January, 1815, and so on for each succeeding year, or should he fail on the last mentioned day to pay the principal sum, then, or in the event that the interest for any one year shall be three months due and unsatisfied, the Trustees may proceed to sell the Lot; first, to discharge all expenses, &c.; “ secondly, to “ discharge the Interest and Debt of §7000, which shall be un- “ derstood to have become due, whenever the interest, before enume- “ rated and spoken of, shall have been three months due and unsa- “ tiiified, or any part thereof shall be so due and unsatisfied.”
The interest due on the 1st day of January, 1815, being in arrear and unpaid by the space of three months, the Trustees were about to sell the Lot, when the Appellant tendered a Bond for the payment of the interest, under the Act of Assembly “ con- “ cerning Executions and for other purposes,” passed November 25th, 1814, for the purpose of stopping the sale. The Trustees having refused to stay proceedings, application was made to the Chancellor for an Injunction, which, being refused by him, was granted by a Judge of this Court, and finally dissolved; from which Decree this appeal is taken.
*499 The Act of Assembly provides, that defendants shall have power to stay Execution upon any Judgment or Decree, &c., by tendering Bond and sufficient security, in double the amount of the principal and interest, payable to the plaintiff or plaintiffs, &c. at the repeal or expiration of the Act; and that proceedings shall be suspended upon every Decree for the sale of real property, and also all proceedings by any Trustee on any Deed of Trust in the same manner, as a Judgment may be stayed. &c.
Bond being tendered, in this case, for the amount of the first year’s interest due and in arrear, only, the first and great question is, whether that sum, agreeably to the contract, was the amount of the creditor’s demand ? W hether that was the principal sum then due, which, with interest thereon, was to be secured according to the provisions of the Act ?
This question, according to my view of the case, will be much simplified by considering what judgment a Court of Law would have given on the Bond above referred to.
If the provision, that, on failure to make punctual payment of the interest, the principal sum shall then fall due and be payable, is to be considered as a new penalty, in addition to the $14,000 penalty in the Bond, in order to enforce payment of the ínteres! annually, then the annual interest would be considered in the nature of instalments, and the Judgment would be entered for the penalty, to be discharged by the instalment, agreeably to Bridges v. Williamson, Stra. 814, and Master v. Touchet, 2 Wm. Bl. Rep. 706. This latter was debt on a Bond, conditioned to pay 600l. and interest, in three years from the date of the Bond, by instalments of 15l. half yearly, and 615l. at the end of (he Term : proceedings were stayed on payment of the interest due, I presume under the Stat. 4 and 5, Ann. ch. 16, § 13, which is so far similar to our Act, that it permits the defendent to bring the money really due into Court, whereas our Act directs judgment to be entered for the sum due.
The case cited is the one before the Court, with thi3 difference, that, in the case cited, there is no stipulation that, on failure to pay the instalment, (which, in that case, as in this, was no more than the interest,) the principal sum should be considered as due.
But why this additional penalty, if the parties so considered it, when, without it, the $14,000 would have been forfeited on *500 failure to pay the interest ? or was it intended to reduce the penalty, in that case, to $7000 ? and on which penalty ought the party to bring suit ? I cannot believe that the parties viewed it in the nature of a penalty. Here was a debt, clcbitum in preesenti, sohsendum in futuro, or in preesenti, at the election of the debtor, upon his compliance, or not. with a condition, by which he could extend the time of payment. He pays no more money, but nays it sooner, or later, at his election. It is no injury to him to pay it promptly, if he is able to (do so» and whether he is, or is not, is within his own knowledge ; and, at all events, there is nothing in the circumstance' of prompt payment, by which the interest is stopped, (which interest is, in law, considered equivalent to the use of the money,) which can swell this into a penalty.
This case is not to my mind distinguishable, in principle, from those of Gowlet v. Hanforth, and Bonafous v. Rybot: the first to be found in 2 Wm. Bl. 958, where the defendant was bound in a Bond conditioned to pay 496Z. by instalments, and, if default were made in the payment of any one or more, then the Bond to stand in force for the whole principal and interest; on default, suit was brought on the Bond : the defendant’s motion, to stay proceedings on payment of the instalments due, with costs, was over-ruled. The Court said, this was not to relieve against a forfeiture: the plaintiff had agreed to give time to the defendant, provided he would punctually pay by instalments 5 by neglecting so to do, he has lost the benefit of his condition, and remains in the case of other debtors on Bond. The second will be found in 3 Burr. 1370, where Lord Mansfield, in distinguishing a like case from those, where greater interest has been reserved, in default of paying a less rate, and which he says would be a penalty, says it is more like the case of a less interest being agreed to be received, if punctually paid ¡ and, says he, “ it is a condition unperformed, therefore the party “ cannot have relief in a Court of Equity, any more than in a “ Court of Law.
The Bill itself, in this case, slates that the credit, which the Appellant was to have according to the contract, made the bargain extremely advantageous to him. So a party might say, that the payment of a less rate of interest would be extremely advantageous to him, and therefore it was a penalty on him. *501 when he was unable to pay punctually, to make him pay the greater sum ; but Law and Equity both say, that, able or not, he must comply with the condition, or forfeit the benefit.
There is nothing hard, oppressive or unfair, alleged as to this .i.srlof the contract : it is not alleged in the Bill, (if such circumstances could have weight,) as it has been in argument, that an enhanced and speculating price*was given; but rather the reverse, as would seem from the above quotation ; nor is it even alleged that the party, from the pressure of the times, was unable to pay the interest; so as to give the Court of Equity any head of jurisdiction, which would not equally have availed at law iti a suit on the Bond; nor is it slated that this was intended as a penalty; on the contrary, the statement in the Bill is, that the condition of the Bond, and the terms of the Deed of Trust were, that, if the interest was not punctually paid, the benefd of the credit should be lost: in short, the Bill puts it merely on the ground, that the interest alone was the demand, which the Appellant had a right to secure under the Act, so as to avail himself of its provisions. Had any of the other grounds been taken, they might have been denied and disproved. Taking this case up, then, on the Bond and Dee.d of Trust, and supposing the Act of Assembly had never been passed ; it may be considered, if the doctrine contended for is law, that, if a man has money to lend at legal interest, for the support of himself and family, he cannot provide for calling in his principal, if that support is not punctually paid him, because it will operate as a penalty on the borrower, however pointedly he may agree to borrow the money on those terms. If this is a penalty in Equity, it is equally so, I apprehend, at Law, and Judgment would be entered up accordingly. It does not appear io me that the place or manner of introducing this stipulation into the Bond, or Deed, can vary the nature of the contract, which, not only by those instruments, but according to the Bill itself, was an agreement to sell property and give a distant, day. for payment, provided the purchaser would pay the interest punctually; without which stipulation, the seller, it is to be presumed, would not have given the day. I can see nothing unfair, unreasonable, or more like a penalty, in this, than in a case «f money, lent as above supposed; and 1 can, therefore, neither *502 on the score of authority, nor reason, give my sanction to the doctrine contended for.
But, if a penalty could be supposed, I should incline to consider it, at most, in the nature of a stipulated, or agreed compensation, to be made in default of punctuality. Courts of Equity, though, will not interfere, as far as I am at present advised, to relieveagainsj such penalties, unless there is something unfair, or very unreasonable in the transaction, (a) But what more reasonable compensation can be given for the price of money, where that price is withheld, than the money itself ? It is the very thing, neither more nor less, which the law gives ; money being worth its interest, and vice versa.
If I am right, then, in my conclusion that, independent of the Act of Assembly above referred to, the Appellant, on failure to pay the interest, would have been compelled to pay both principal and interest; and that neither a Court of Law, nor Equity would have relieved him therefrom ; the second question, if it may be called one, is, whether that Act alters the case ? If the preceding part of my opinion is law, it will be admitted, I presume, that, if the Appellee had sued on the Bond, the Appellant could not have pleaded a tender of a Bond, for the Interest, on the 1st of January, in discharge of the action, so as to make such Bond tantamount to a payment of the Interest on the day, and so a compliance with the condition. If such plea would have been over-ruled on demurrer, and the Court would have given Judgment, (for want of a sufficient plea,) for the penalty, to be discharged by the $7000, with Interest and Costs; then, to avail himself of the Act, the Appellant must have tendered Bond and Security for this sum: and, I presume, after such Judgment, no Court of Equity, resting on the Act of Assembly alone, would have enjoined that Judgment, on the Appellant’s allegation that he had tendered Bond and Security for the Interest; a fact, which he could have shewn was admitted by the Demurrer in the aetion at Law. If the Court could not interfere in the case supposed, neither, I apprehend, could they, to stop the Trustees, unless Security for the $7000, and Interest, had been tendered; and this, independent of the consideration, that, according to the Deed of Trust, as it appears to me, there is no remedy under it, to sell for the Interest annually; which *503 is a farther proof of the full understanding of the parties, that, in default of payment of interest, the payment of the principal was to be enforced. The Act, I apprehend, did not intend to stop or change the operation of contracts, but to stop, to a certain extent, the operation of the Courts of Justice in carrying into effect their Judgments and Decrees, and to place proceedings, under Deeds of Trust, in the same situation as Judgments or Decrees in Chancery for the sale of property.
How far the Act, as to this subject, staying proceedings under Deeds of Trust, was an unconstitutional interference with, or change of the contract of the parties, was touched upon by the Appellee’s Counsel; but was afterwards, as I understood, waived by him, and is not intended to be considered or decided on by the present Court, consisting of but three members, unless it shall again be brought before them, when it must stand over for a fuller Court. According to my view, however, be that question as it may, the party is not entitled to the benefit of the Act, having tendered Security only for the amount of the Interest due. For these reasons, and not those assigned by the Chancellor, 1 am for affirming his Decree.
Judge Cabell. As Lord Mansfield said in the case of Bonafous v. Rybot, Burr. 1370, there is a distinction in Courts of Equity, “ that, if five per cent, be reserved for inte‘c rest on a Mortgage, with a condition to accept four, if punc- “ tually paid; this condition must be strictly performed : and “ the Debtor shall not have relief in equity after the day of “ payment elapsed; because the one per cent, was to be “ abated upon a condition, which is not performed. But if four “ per cent, be reserved, with an agreement that, if the four “ per cent, be not punctually paid at the day, the Mortgagee “ shall ¡iay five, that shall be considered as a penalty added: and “ the Court of Equity will in such case relieve against it.”
These principles are well elucidated in the case just cited from Burrow. There, “ the Bond was conditioned for the !t payment of a gross sum then due, to be paid at a certain “ fixed day. There was a subsequent agreement, made in “ favor of the Debtor, easing him of that stipulated single “ payment at that fixed day, and allowing him to pay it by *504 “ more distant instalments; provided that he pay it punctual- “ Iy on the day agreed upon : otherwise the agreement and “ defeazance to be void.” The Debtor did not pay the instalments punctually, and the Court determined that therefore the agreement and defeazance were void, and that the gross sum was due to the Obligee. That case was within the former part of the distinction above referred to; “ for it was a condition unperformedand consequently the Debtor could not be relieved even in a Court of Equity.
The case of Gowlet Ex’or. of Gladwell v. Hansforth, (2 Sir Wm. Black. Reports p. 958) was decided on the same principles. The facts of that"'case are not so fully stated, as those of the case in Burrow, although the decision turned on the special condition of the Bond ; but it is evident, from the reasons assigned by the Court in its decision, that the facts were substantially the same; and more especially, that the stipulation, to pay by instalments, was introduced for the benefit of the Debtor, by enabling him to discharge by more remote instalments, a gross sum which, but for that stipulation, would, according to the original contract of the parties, have been sooner due and demandabie. For the Court expressly says that, “ the plaintiff had agreed to give time to the defendant, “ and to forbear prosecuting his just demand, provided the de- “ fendant would punctually discharge it by instalments. By “ neglecting to do so, he has lost the benefit of his condition, “ and remains in the case of other Debtors on Bonds.”
These were cases, where relief was refused to the Debtor; but the principles, on which it was refused there, shew that it ought to be granted in the case, now to be decided.
In all cases of this kind, it is necessary to ascertain the true intention of the parties, and to distinguish carefully between the original contract itself, and any subsequent stipulation,,which purports to effect a qualification or modification of that contract; between what the parties originally intended to be done, and what they may agree to substitute therefor, on certain events. Thus, in the cases cited above, from Burrow and Sir Wm. Blackstone, the original contract was to pay a gross sum by a certain fixed day; the subsequent stipulation was for discharging that sum by distant and easy instalments. In the case of an ordinary Bond, the original contract is to *505 pay a certain sum by a given day; the stipulation engrafted, on it is, that, in case of failure to pay at that day, the Debt-, or is to pay double the sum. It is all important to ascertain the character of these stipulations, if they were introduced for the benefit of the Debtor, (as in the cases above cited) by extending to him a more easy mode of payment, he will be permitted to avail himself of them, provided he comply with the terms; because it is competent to the Creditor to abate a portion of Ms own just rights. But if the object of the stipulation be to ensure to the Creditor a punctual compliance with the original contract, by imposing upon the Debtor farther and greater obligation in case of failure, it is considered as a penalty which is always relieved against; for Equiiy is satisfied with the execution of contracts according to their true and original intent.
Let these principles be applied to the present case. Both the Bond and the Deed of Trust shew (hat the Contract was for the sale of a Lot at the price of $7000, payable on the 1st of January, 1824, with Interest from the 1st of January, 1814; the interest to be paid annually on the first day of January in each year. This was the real Contract between the parties, to which a stipulation was superat'ded, that if the Interest be not paid, the whole principal was to become due and recoverable. The distinction is most obvious between this case and those cited. There the stipulation was for the benefit of the Debtor; here for the benefit of the Creditor. This stipulation, if it be allowed to operate ai all, effectually changes the contract of the parties, by subjecting the Debtor to the immediate payment of a sum, which, by the original contract, was not to be paid ’till the year 1824, ami is as much a penalty, as the obligation to pay double the amount of the Debt, incase the Debt itself be not punctually paid. Upon general principles of equity, therefore, I think Mayo should be relieved against the forfeiture, which has occurred, and that no sale shall take place but for the interest, which lias fee corred.
Mayo’s title to relief from the forfeiture, being thus independent of the Act of Assembly, it is unnecessary to enter into the constitutional question, raised in the argument. I did not, however, understand the Counsel for the Appellee, as contend *506 ing.that the Act of Assembly is unconstitutional, so far as it op<r« rates merely to postpone the payment of a Debt under the circumstances, and in the manner, contemplated by the Act. And the Act is not relied upon, in this case, farther, than as it postpones the payment of the Interest, which Interest, in my opinion, constituted the whole of the demand, that Equity will tolerate.
I am therefore for reversing the Chancellor’s Decree, and re-iristating the injunction.
The following was the opinion of the Court, pronounced by Judge Roane :
The Court is of opinion, that the stipulation, both in the bond and deed of trust exhibited with the Bill, whereby it i» provided that, if the said Mayo should fail to pay the annual interest, the principal sum of seven thousand dollars should be considered as due, is in the nature of a penalty, against which it is the province of a Court of Equity to relieve; that the amount, which the creditor was entitled to demand of his debtor in this case, was the interest, due on the first day of January. 1815; that the payment or tender of this sum by the deb tor, at any time before the sale under the Deed of Trust, authorized the debtor to call upon the Court of Chancery, to prevent such sale; and that, by virtue of the Act of Assembly, “ concerning Executions, and for other purposes,” passed oe the 25th day of November, 1814, the debtor was authorized to substitute bond and security for the interest, in lieu of the money ; (which sum so secured would have borne interest;) a tender of which bond and security is admitted by the answers of the Trustees to have been made.
For these reasons, the Order of the Chancellor, dissolving the complainant’s Injunction, is reversed, and the Injunction is reinstated: and the Court, proceeding to make such order in the cause, as should have been made in the Court below, doth adjudge and order, that the Injunction, so far as it seeks to inhibit the sale of the property for the payment of the principal sum of seven thousand dollars, by reason of the non-payment of the interest, due on the first day of January, 1815, be perpetuated. And the Court doth farther adjudge, order and decree, that, if the creditor Judah shall make the *507 endorsement on the said Deed of Trust required by the Act in such case made am! provided^ (1) then the Injunction shall he one.) to a motion for dissolution, and an order of sale for the said sum, due for Ínteres! as aforesaid, with interest thereupon ; büí, on the payment of such last mentioned sum, by the said Mayo, at any time before the sale, after deducting therefrom the Costa in this Court, and the Supreme Court of Chancery, that then the said Injunction be wholly perpetuated.

 Fonbl. Bk. 1st, ch 3, § 2 note (d); 2 Atk. 190, Roy v. the Duke of Beaufort: 4 Burr. 2228, Lowe v. Peers.

 Jiote. See the Acts of 1816, ch. 40. § 1. p. 70.