THE SALT SPRINGS NATIONAL BANK OF SYRACUSE, Respondent, *v.* WILLIAM H. BURTON, impleaded, etc., Appellant.

In an action against an indorser upon a promissory note made payable at a bank, it appeared that, upon the day the note fell due, the *indorser* was ready to pay it and sent the maker to the bank several times during banking hours to see if the note was there and to ascertain the amount. The note was not presented for payment until an hour after the close of the customary banking hours, when the holder was admitted into the

bank, found the cashier and demanded payment, which was refused on the ground that no funds had been left with the bank to pay. *Held*, that the demand was sufficient to charge the indorser.

*It seems*, that, had the *maker* gone to the bank prepared to pay and waited there for that purpose until the close of banking hours, or had he placed funds in the bank and allowed them to remain there until the close of business hours and then withdrawn them, in consequence of the non-presentment of the note, the indorser would have been discharged.

(Argued September 23, 1874; decided October 6, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon the decision of the court upon trial at Circuit without a jury.

This action was brought upon a promissory note made by defendant Phelan and indorsed by defendant Burton, who alone defended. The note was made payable at the First National Bank of Waterloo.

The court found the following facts, among others : That it was the ordinary custom of said bank to commence its business at nine o'clock in the forenoon of the day and to close the same at four o'clock in the afternoon; that on the day said note fell due the defendant Burton was ready to pay the same and sent Phelan, the maker of the note, to said bank several times during banking hours to see if said note was there and ascertain the amount of the same, but he was informed each time that the note was not in the bank ; that on said day Thomas J. Leach, the cashier of the plaintiff, went to Waterloo, having said note in his possession, but did not arrive there till about five o'clock in the afternoon. He went to the said bank and obtained entrance. He found therein Myndert D. Mercer, who was the cashier of said bank and also a notary public. He then and there presented to said Mercer said note and demanded payment thereof, and payment was refused for the reason that no funds had been left with the bank to pay the same; thereupon said Mercer protested said note. This was the first time that said note was presented to said bank for payment on that day.

As a conclusion of law, the court held the defendant Burton liable and directed judgment for the amount of the note.

*R. Ten Eyck* for the appellant. The demand of payment was insufficient to charge the indorser. (*Bank of Syracuse* v. *Hollister*, 17 N. Y., 47; *N. I. R. M. Co.* v. *Bishop*, 3 E. D. Smith, 48.) The fact was assumed on trial that the indorser was ready and offered to pay during banking hours, and the case was disposed of on that assumption. It cannot be questioned on appeal. (*People* v. *Cook*, 4 Seld., 78; *Smith* v. *Hill*, 22 Barb., 658; *Sipperly* v. *Stewart*, 51 id., 66.)

*Levi W. Hall* for the respondent. The maker had the entire day in which the note fell due to pay in. (*Smith* v. *Aylesworth*, 40 Barb., 104; *Oothout* v. *Ballard*, 41 id., 33.) Though presentment was made after banking hours, as it was presented to a proper officer it was sufficient, and no funds being provided to pay the indorser was liable. (1 Starkie, 386; 13 East, 459; *N. I. R. M. Co.* v. *Bishop*, 3 E. D. Smith, 48; *Oothout* v. *Ballard*, 41 Barb., 33; *Smith* v. *Aylesworth*, 40 id., 113; *Bank of Syracuse* v. *Hollister*, 17 N. Y., 46; *Shepherd* v. *Chamberlain*, 8 Gray, 225.) The indorser was not relieved by his sending the maker to the bank to inquire for note. (*Moore* v. *Britton*, 22 La., 64.)

RAPALLO, J. When a note is made payable at a bank the general rule is that in order to charge the indorser the note should be presented for payment at the bank during its customary business hours, for if the holder goes to the bank after those hours and finds it closed or no one there authorized to answer to the demand, he can make no valid demand, and the indorser will be discharged. (*Parker* v. *Gordon*, 7 East, 385; Byles on Bills, 205, 206.) In other cases the holder has the whole day to present the bill or note, the only limitation being that he must present it at a reasonable hour, and this may depend upon the circumstances of the case. (*Wilkins* v. *Jadis*, 2 B. & Ad., 188.) But even in the case

of paper payable at bank, if after business hours the holder obtains admittance and finds in the bank a person authorized to answer, a demand of such person and refusal for want of funds will in general be sufficient. (*Bank of Syracuse* v. *Hollister*, 17 N. Y., 46; Byles on Bills, 212 [ed. of 1836]; *Shepherd* v. *Chamberlain*, 8 Gray, 225; *Flint* v. *Rogers*, 15 Maine, 67; *Allen* v. *Avery*, 47 id., 287; *Henry* v. *Lee*, 2 Chitty, 124; *Garnett* v. *Woodcock*, 1 Stark., 475.)

In the present case the customary business hours of the bank at which the note was payable ended at four o'clock P. M. The note was not brought there for presentation until five P. M., but the holder was then admitted into the bank and there found the cashier of whom he demanded payment, which was refused on the ground that no funds had been left with the bank to pay the same. The only question raised in the case is as to the sufficiency of that demand under the special circumstances.

It is not disputed that the cashier was a proper person of whom to make the demand, but it is considered on the part of the appellant that there exists a feature in this case which distinguishes it from all those in which a demand after business hours has been held sufficient, viz., that up to the close of business hours on the day of maturity the indorser had been endeavoring to find the note for the purpose of paying it, but that it was not at the bank, and it is claimed that if it had been presented at the Bank during business hours it would have been paid. This claim is founded upon the finding of the court, that on the day the note fell due the indorser was ready to pay it and sent the maker to the bank several times during banking hours, to see if the note was there and ascertain the amount of the same, but was informed each time that the note was not in the bank.

It was stipulated on the trial that these inquiries were made to enable the indorser to pay the note, and that they were continued up to the time the bank closed, and we think the fair interpretation of the finding is that Burton, the indorser, had the funds wherewith to pay the note and endeavored to

do so, but was prevented by the failure of the holder to present the note at the bank during business hours. The question now before us is whether those facts make the case an exception to the general rule, that a valid demand can be made after business hours if the holder obtains admittance into the bank and there finds a person authorized to answer to the demand.

Had the · *maker* gone to the bank prepared to ·pay the note, and waited there for that purpose until the close of business hours and then left, or had he placed funds in the bank and allowed them to remain there until the close of business hours, and then withdrawn them in consequence of the non-presentation·of the note, we are of opinion that a subsequent presentation for payment would not have been sufficient to charge the indorser. The leading English case upon this subject is *Parker* v. *Gordon* (7 East, 387), decided in 1806, in which Lord ELLENBOROUGH says : " If a party choose to take an acceptance, payable at an appointed place, it is to be presumed that he will inform himself of the proper time for receiving payment at such place, and he must apply accordingly, and, if by going there out of due time the bill be not paid, it is his own fault, and he cannot proceed as upon a dishonor of it. * * * It is fishing for the dishonor of a bill made payable at a banker's, to present it there for payment at a·time·when it is known,· in the usual course of business, that it cannot be paid."

This decision was followed in 1813, in *Elford* v. *Teed* (1 Maule & Selw., 28), where the business hours of a bank are compared to the *horæ juridicæ* of the courts of justice.

The first case in which this rule was qualified is *Garnett* v. *Woodcock* (1 Starkie, 475), where Lord ELLENBOROUGH, in 1816, held, at *nisi prius*, that a presentment at a banker's after banking hours was sufficient, provided a person was stationed there by the banker to return an answer.

Upon these cases are founded all those which follow upon the subject of the presentment of commercial paper made payable at a bank.

It is to be observed that, in the two cases first cited (*Parker* v. *Gordon* and *Elford* v. *Teed*) the action was brought by the indorsee of a bill of exchange against the drawer, and the drawer was held to be discharged by the failure to present the bill during business hours; while in the last case (*Garnett* v. *Woodcock*) the action was against the acceptor. In this State, where a note or bill is payable at a particular time and place, a demand at the place appointed is not necessary to sustain an action against the acceptor or maker. (*Wolcott* v. *Van Santvoord*, 17 Johns., 248; *Caldwell* v. *Cassidy*, 8 Cow., 271.) But in England, at the time of the decision in *Garnett* v. *Woodcock* (though since changed by statute), such demand was necessary (*Bowes* v. *Howe*, 5 Taunt., 30; *Sanderson* v. *Bowes*, 14 East, 500; *Dickinson* v. *Bowes*, 16 id., 108; *Rowe* v. *Young*, 2 B. & B., 165; S. C., 2 Bligh, 391), a doctrine to which Lord ELLENBOROUGH had been, individually, decidedly adverse. (*Lyon* v. *Sundius*, 1 Camp. N. P., 423.) The presentment in *Garnett* v. *Woodcock* was at eight in the evening, to a boy, who replied that he had no orders, and this was held by Lord ELLENBOROUGH sufficient, in an action against the acceptor. But had the action been against the drawer, and had he shown that the acceptor had funds and would have paid the bill in case it had been presented during business hours, the decision would probably have been different. In *The Bank of Syracuse* v. *Hollister* (17 N. Y., 46), where the presentment was out of business hours, stress is laid upon the facts that no person had inquired for the note during business hours, and that the maker had no funds in the bank, and in none of the cases, where a demand out of business hours has been sustained, does it appear that any effort had been made to pay the note, except in the case of *The Bank of Utica* v. *Smith* (18 J. R., 230) and *Newark India Rubber Mfg. Co.* v. *Bishop* (3 E. D. Smith, 48). The case in 18 Johnson was decided upon the ground that the presentment was in fact made during business hours, and that the person having the funds should have waited the customary fifteen minutes after

three, during which the bank was kept open for the present-ment of paper. The case in 3 E. D. Smith presents the very point which arises in the one now at bar, and affords a clear illustration of it. That was an action against two indorsers of a note, payable at bank. One of the indorsers (Bishop) placed funds in the hands of the paying teller for the purpose of paying the note. These funds were not deposited to the credit of the maker, nor entered on the books of the bank; the teller was the agent simply of Bishop, the indorser, to pay the note if regularly presented. The teller remained at the bank until the close of business hours, and then left, the note not having been presented. After he had left the note was presented, and a clerk, being still there, examined the account of the maker, and not finding sufficient funds to his credit, answered, no funds. Bishop afterward, finding that the note had not been presented during business hours, withdrew the funds which he had placed in the hands of the paying teller.

A verdict having been rendered against both indorsers, WOODRUFF, J., refused to set it aside as to Bishop, but did set it aside as to the other indorser, and, afterward, in a very clearly reasoned opinion, delivered at General Term, demonstrated the justice of his conclusion.

As to Bishop, he had himself undertaken to pay the note, and on learning that it had not been duly presented, withdrew the funds which he had appropriated to its payment. But, as to the other indorser, the case was different. If the note had been presented within the usual business hours, it would have been paid out of funds provided either by the maker or the first indorser in his behalf, and the second indorser would have been discharged. It was by the omission of the holder thus to present it, and from that cause alone, that the note was not paid at its maturity. The second indorser should not be held under those circumstances. In the case at bar, the finding is not that the *maker* was ready to pay, but that the defendant, the indorser, was endeavoring to pay the note. If he was provided with funds for that purpose he must have

retained them. He knew that the note was not paid, and did not expect the maker to pay it, but had himself undertaken to do so. Under these circumstances his readiness to pay does not, in our judgment, distinguish the case from that of *The Bank of Syracuse* v. *Hollister*, and those upon which it was based. The defendant cannot have sustained any injury, unless it be the expenses of protest, which are trifling, and about which no point seems to have been made at the trial.

The judgment should be affirmed, with costs.

All concur; GROVER, J., in result.

Judgment affirmed.