[Filed December 3, 1885.]

## SILA A. ADAMS, ADMINISTRATOR, v. R. H. AND HANNAH RUTHERFORD.

TENDER—PROMISSORY NOTE—PLACE OF PAYMENT.—When a promissory note is payable at a particular place, to make a good tender the payor must be at the place of payment at the time it matures, ready and willing to pay, and should either deposit the amount due in some bank or other place to be paid, or keep it intact; and in either case, if suit be commenced, carry it into court, and deposit it there when he files his answer.

NEGOTIABLE INSTRUMENT.—Where such a note provides for the payment of interest at stated times before maturity of the principal, and that "if not so paid the whole sum, both principal and interest, to become immediately due and collectible at the option of the holder," the latter clause is not to be interpreted by the law merchant, but by the ordinary law of contracts; and the party who claims a breach must show performance on his part. *Per* THAYER, J., *arguendo*.

IDEM—FORFEITURE OF TIME OF CREDIT.—Where the failure of the payor of such an instrument to pay or tender an installment of interest on the day specified is caused by some conduct of the payee calculated to mislead the payor, or designed to prevent payment of the interest on the day specified, or when the complainant is not free from fault, a court of equity will refuse to enforce forfeiture of the time of credit. WALDO, C. J., dissenting.

MARION COUNTY.     Plaintiff appeals.     Affirmed.

*C. J. McDougall,* for Appellant.

As against a maker of a promissory note or acceptor of a bill of exchange payable at a specific place, it is not

necessary for the holder thereof to make demand of payment at such place, as a condition precedent to bringing an action thereon; nor to aver such demand in the complaint, or prove it on the trial. (Moak's Van Sant. Pl.,. 3d ed., 321; *Adams* v. *Hackensack Imp. Com.*, 43 Am. Rep. 407. The liability of the maker of a note payable at a. particular place, or of the acceptor of a bill so payable, is. not a conditional liability depending upon presentment, and demand of payment at the place where the note or bill was made payable, but is an absolute liability to pay generally. (*Wallace* v. *McConnell*, 13 Pet. 145; *Bank* v. *Smith*, 11 Wheat. 171; *Cox* v. *Nat. Bank*, 100 U. S. 714; *Schoharie Co. Bank* v. *Bevard*, 51 Iowa, 258; *Armistead* v *Armistead*, 10 Leigh, 525; *Watkins* v. *Crouch*, 5 Id. 522; *Ruggles* v. *Patten*, 8 Mass. 480; *Caldwell* v. *Cassidy*, 8 Cow. 271; *McQairy* v. *Bell*, 1 Yerg. 502; S. C., 24 Am. Dec. 454; *Renshaw* v. *Richards*, 30 La. Ann. 398; *Hills* v. *Place*, 48 N. Y. 520; *Howard* v. *Boorman*, 17 Wis. 459; *McCullough* v. *Cook*, 34 Ind. 290; *Montgomery* v. *Tutt*, 11 Cal. 307;. *Reeve* v. *Pack*, 6 Mich. 240; *Yeaton* v. *Berney*, 62 Ill. 62; *Hall* v. *Allen*, 37 Ind. 541.)

*William M. Ramsey*, for Respondents.

According to English authority, the holder of a note payable at any particular place could not maintain an action upon it, until he had demanded payment at the place specified; and it was necessary to allege such a. demand in the complaint. (*Sands* v. *Clark*, 65 Eng. Com. L. 751; Story on Notes, secs. 227, 229.) "And plainly, one cannot maintain a suit against another for not doing what he put it out of the other's power to do." (Bishop on Contracts, sec. 695; *Stewart* v. *Keteltas*, 36 N. Y. 388; 2 Chitty on Contracts, 11th Am. ed., 1087; Pollock on Contracts, 372, 373.)

THAYER, J. This appeal is from a decree of the Circuit Court for the county of Marion, rendered in a suit.

brought by the appellant against the respondents to foreclose a mortgage. It appears that on the twenty-third day of August, 1883, the respondent R. H. Rutherford executed to one Jesse Adams a promissory note, of which the following is a copy:

"On or before five years after date, without grace, I promise to pay to the order of Jesse H. Adams, at Salem, Oregon, twenty-three ($2,300) hundred dollars in gold coin of the United States of America, of the present standard value, with interest thereon in like gold coin at the rate of eight per cent per annum from date until paid, for value received. Interest to be paid annually, and if not so paid, the whole sum, both principal and interest, to become immediately due and collectible at the option of the holder of this note; and in case suit or action is instituted to collect this note, or any portion thereof, I promise and agree to pay, in addition to the costs and disbursements provided by statute, such additional sum in like gold coin as the court may adjudge reasonable for attorney's fees, to be allowed in said suit or action.

[Signed]            "R. H. RUTHERFORD."

That, in order to secure the payment of the said note, said respondents at the same time executed to the said Jesse H. Adams a mortgage upon certain real property situated in the said county of Marion; that after the execution of said note and mortgage the said Jesse H. Adams died, and the said respondent, Sila A. Adams, was duly appointed his administratrix with the will annexed. It is alleged in the complaint that the respondents failed to pay the installment of interest which fell due on the twenty-third day of August, 1884, and that consequently the whole sum of principal and interest became due by the terms of the note, and the suit was instituted to enforce payment of the entire demand.

The respondents in their answer alleged that when the note was made both payee and maker resided in the

county of Marion, but that the appellant then, and for more than four months past had, resided in Multnomah County, and that said note had, during such time, been in said last-mentioned county, and had not at any time during said period been in Salem, or to be found there; that the respondent had not presented said note to the maker for payment at any time, at Salem or elsewhere, or demanded payment of said interest; that on said twenty-third day of August, 1884, the said maker was, and ever since had been, able, ready, and willing to pay to the holder the said interest, and that he had in Salem, when said interest became due, sufficient funds to pay it, and was then willing, and tendered the amount and brought it into court, and deposited it for the appellant. These several allegations, excepting place of residence of the appellant, were denied in a reply filed on behalf of the appellant, and which constituted the main issues tried. Evidence was taken in the case, from which the Circuit Court found that said installment of interest had been tendered; and the amount having been paid into court, decreed that it be applied to the payment thereof, and that the appellant pay the costs of the suit. I have ex-amined the evidence, and am satisfied that the respond-ent R. H. Rutherford intended to pay such interest at its maturity. The appellant had been, before it accrued, negotiating with him to pay the whole claim. About the day it fell due, the said respondent transmitted to her a check drawn by the Oregon and California Railroad Company on Ladd & Tilton, which he had obtained, amounting to $94.50, and two or three days thereafter sent her a draft on Allen & Lewis for $125; that several days before the said twenty-third day of August he wrote her, inquiring as to whom he should pay said interest; that he made arrangements with a banking-house at Salem by which he might draw on it for funds. Subse-

quently to sending the check to appellant of $94.50, he received a letter from Messrs. McDougal & Bower, appellant's attorneys, bearing date August 26, 1884, in which the same was inclosed, and which stated, in effect, that the appellant would not receive it, as it was not the whole amount. The said draft was also subsequently returned. Thereupon, he sent the balance due on said interest by express in the care of Messrs. McDougal & Bower; that afterwards the summons in the suit was served upon him, and he then sent his brother down to pay it, but appellant would not receive the amount.

It is unnecessary to review the evidence further. There can be no question in my mind but that said respondent used all reasonable efforts to pay said interest; still I do not think they strictly or technically amounted to a tender. I understand the rule in such cases to be that the payor of a note must be at the place of payment at the time it matures, ready and willing to pay the same, and that he should either deposit the amount of money due in some bank or other place to be paid, or keep it intact; and in either case, if suit be commenced, carry it into court and deposit it there when he files his answer. These very nice requirements of the law upon the subject of tender were not observed by the respondent in this case, neither was the appellant at Salem on said twenty-third day of August, 1884, to receive said interest, nor had she designated any person to whom it could have been paid. The result is, that, as a matter of strict law, she was entitled to a decree for the payment of the amount of said interest, and to have the mortgaged property sold, and the proceeds applied for that purpose. The appellant's counsel further claim that, as a sequence, the entire debt became due, and that the appellant is entitled to a decree for the full amount, in accordance with the clause in said note which provides that the

interest shall be paid annually, "and if not so paid, the whole sum, both principal and interest, to become immediately due and collectible, at the option of the holder of the note." But I do not think they can maintain that position. I am of the opinion that such a clause in a note must be construed independently of the rules established by the law merchant. It must stand upon its own basis. It is a stipulation grafting upon the note another genus. Under the *lex mercatoria*, as expounded by the American courts, we may be compelled to conclude that the appellant need not aver or prove that she performed, upon her part, the acts by which payment of said interest could have been made, in order to maintain her suit; but it does not follow that she is relieved from averring and proving such performance in order to obtain the benefit of a provision foreign to that Code. The stipulation ought not to be rendered effectual, except in accordance with the principles of the general law of contracts. In that view of the matter, the appellant should not be heard to complain of the said respondents not being present at Salem on the day the interest fell due, ready to pay it, unless she was there ready to receive it, or had designated some party to whom he might pay it. He had, about a week before the time, written the appellant to know how or where he should pay the interest, and fair dealing required that she should have answered that letter. His going to Salem upon the day the payment was to be made, and remaining there ready and willing to pay the interest, might have answered the technical requirements of the law; but practically, it would have been an idle affair. It would have been of no benefit to the appellant. He could not have paid the money to any one; and if he had deposited it there, it would have been of no advantage to the appellant whatever.

She apparently did not want him to pay the interest, was anxious that the time in which he was to pay it by the terms of the note should run past; and it appears to me that she is endeavoring, by means of a mere technical rule, to perpetrate what might be a great hardship and wrong upon the respondents. The money was sent to her before she began her suit, and what more could she have honestly desired? Time was not the essence of the contract. The stipulation could only have been intended for the purpose of saving the holder of the security the necessity of commencing a number of suits to obtain satisfaction of the debt, and was not expected to become operative unless the payor utterly failed to make the payment. It could not have been designed as "a trap for the unwary," and the attempt to take advantage of it in the manner in which the appellant is endeavoring to, under the circumstances disclosed by the evidence, is unconscionable; and if a court of equity were to aid in carrying out a scheme that would enable one party to gain an undue advantage over another, it would abuse the important mission intrusted to it. It may seem very absurd to determine that for one purpose a note has not been paid, and for another that the holder cannot claim a default upon the part of the maker by reason of a non-performance on his part, but the parties to the note have occasioned the seeming inconsistency by inserting in it stipulations of a dissimilar nature. A promissory note is a written promise to pay a sum of money, at a certain definite time. The stipulation is to the effect that, in a certain event, a sum of money shall become payable; otherwise not. The instrument combines two heterogeneous features, one of which must be interpreted by the law merchant, and the other by the ordinary law of contracts. In the latter case, the party who claims a breach must show performance upon his part. The

clause referred to is no doubt lawful, and the view here taken may appear subtile; but it is fair and proper to counteract a technical claim that would work injustice, by the employment of technicality.  I concede that the construing of the different parts of the same instrument by different systems of law is the getting down very much to a nicety, but when parties jumble up their transactions by blending elements of a different character, refined discriminations have to be resorted to, especially when the matter comes before a court of equity—a tribunal that can never, consistently with the object and purpose for which it was established, assist in the perpetration of a wrong.  I am of the opinion that, upon general equitable principles, the appellant should not be allowed the relief she claims.  Equity never enforces a penalty or forfeiture, nor the specific performance of a contract, except to subserve the ends of justice.  The appellant has not done equity in the affair, and is endeavoring to secure an unjust advantage.  I think the appellant should have a decree for said amount of interest, with costs and disbursements up to the time the money was brought into court, and that the same be applied upon said interest, and the said costs and disbursements allowed as above, and that the respondents pay any deficiency that may remain; and that, in default of such payment, the appellant have leave to enforce it by execution and sale of said mortgaged premises, and that each party pay one half of the disbursements upon appeal to this court; and the decree appealed from be modified in accordance with the principles of this decision.

LORD, J. (concurring).   In concurring in the opinion of my associate for the affirmance of the decree in this suit, I have deemed the questions involved of such importance to the business interests of the community as

to require a statement of the grounds upon which my opinion is founded. It is an elementary principle that a court of equity has no power to make or alter the contracts of parties; but ordinarily, its duties are, when invoked, to enforce them as made. Nor is the mere fact that the bargain is hard, or even unreasonable, sufficient of itself to induce the court to interfere; but there must be connected with the contract some element or matter of equitable jurisdiction—such as fraud, mistake, duress, undue advantage, or the like, either inhering in the contract, or growing out of the age, relation, condition, or circumstances of one of the contracting parties—which probes the conscience of the chancellor, and invokes the protecting jurisdiction of equity. More than a century ago, Lord Chancellor Hardwicke said:

" It is not sufficient to set aside an agreement in this court to suggest weakness and indiscretion in one of the parties who has engaged in it; for, supposing it to be in fact a very hard and unconscionable bargain, if a person will enter it with his eyes open, equity will not relieve him upon this footing only, unless he can show fraud in the party contracting with him, or some undue means made use of to draw him into such an agreement. ( *Willis* v. *Jernegan*, 2 Atk. 251.)

There may possibly be contracts, not infected with fraud or imposition, which are so grossly unreasonable and oppressive that, in view of all the circumstances, a court of equity may be induced to interfere and grant relief; but as Judge Story says, the court in such case is " certainly very cautious of interfering," and only " upon very strong circumstances," and only then, it would seem, where some undue advantage is sought to be taken of some strict rule of law. (1 Story's Eq. Jur., sec. 331.) It may, therefore, be said that when a contract has been entered into which is legally binding upon

the parties, and a breach or default in any of its terms occurs, equity will not interfere and relieve the party in default of the performance of his promise or engagement, unless he can offer some good excuse; such as fraud or misconduct in the other party, or accident, mistake, and the like.

Turning, now, to the contract under consideration, can it be said that the stipulation complained of is not legal, or that it imposes any inequitable obligation? In effect, it simply provides that the interest shall be paid at stated periods of time, and in case of default in the payment of such as agreed, the creditor may insist upon the payment of his whole debt at his option. This is but an absolute promise of the debtor or obligor to pay the interest when due, coupled with the condition that, failing in this, he will be at once bound, at the option of the creditor, to pay the whole debt—all of which, in fact, he owes, and upon the faith of which promise and its performance the creditor parted with his money or property. Whether the credit shall be for the whole period or shorter, is made to depend upon the promptness with which the borrower pays the interest according to his agreement. Time is made the essence of the contract, and although the general rule is that equity will not regard time in the performance of contracts, yet if the parties have seen fit to make it the essence of their agreement, equity will not interfere to aid the party in default, unless he can offer some good excuse recognized in equity for such default. Nor is there any hardship in making the contract so. By such a stipulation, the party desiring to borrow is often enabled to secure a larger loan than he otherwise could upon the same property or other security, or to purchase property and contract for its payment upon more advantageous terms. To relieve him of his engagement when a benefit has thus

been obtained upon the faith of his promise, and allow the interest to accumulate, might result, in many cases, in swelling the dimensions of the debt beyond the value of the security, or his ability to pay when the last day of grace had come. It might thus work, in some cases, a positive disadvantage and inequity to both parties—to one the sacrifice or loss of his property, and to the other the loss of part, at least, of his debt—a catastrophe which, perhaps, might have been averted by a strict performance of the contract, and which we may suppose the calculations of the parties were designed to prevent when the contract was made. To my mind, there is nothing in such a contract which is inequitable, unreasonable, or oppressive. If the party suffers in consequence of his own default, it is the penalty of his own negligence, and of which he has no right to complain in a court of equity; for certainly it furnishes no ground for such court to intervene and relieve him from the payment of the interest according to the conditions of his own agreement, unless his default occurred in consequence of some act of the other party designed to mislead him, and to prevent the payment of the interest at the time appointed by the contract, or by reason of accident or mistake. In *Noyes* v. *Clark*, 7 Paige, 179, S. C., 32 Am. Dec. 629, the chancellor says:

" The parties had the unquestioned right to make the extension of credit dependent upon the punctual payment of the interest at the time fixed for that purpose; and if, from the mere negligence of the mortgagor in performing his contract, he suffers the whole debt to become due and payable, according to the terms of the mortgage, no court will interfere to relieve him from the payment thereof according to the conditions of his own agreement." (*Steel* v. *Bradfield*, 4 Taunt. 227; *James* v. *Thomas*, 5 Barn. & Adol. 40.)

The authorities to this point are numerous and unanimous. (*Ferris* v. *Ferris*, 28 Barb. 31; *Valentine* v. *Van Wagner*, 37 Id. 60; *Rubens* v. *Prindle*, 44 Id. 336; *Bennett* v. *Stevenson*, 53 N. Y. 508; *Martin* v. *Melville*, 11 N. J. Eq. 222; *Wilson* v. *Bird*, 28 Id. 352; *De Groot* v. *McCotter*, 19 Id. 532; *Cassidy* v. *Caton*, 47 Iowa, 22; *Heath* v. *Hall*, 60 Ill. 344; *Terry* v. *Trustees Eureka College*, 70 Id. 236; *Leonard* v. *Tyler*, 60 Cal. 299; *Stanclift* v. *Norton*, 11 Kan. 218; *Crane* v. *Ward*, Clarke Ch. 393.) In the last case named, this language is used:

" The entire amount cannot be altered by any construction which may be given to the contract. The time of payment only is contingent. The parties to the original contract have, unquestionably, a right to agree that if the interest upon the money is not paid punctually, the principal shall become due; so they might make any other event the criterion of the time when the principal was to be paid."

Nor does it make any difference whether the stipulation is contained in the note or mortgage; for " it is well settled that where several instruments are executed together as parts of the same transaction, they are all to be considered in determining what the agreement was." (*Schoonmaker* v. *Taylor*, 14 Wis. 342.)

Nor is such an agreement in the nature of a penalty or forfeiture, as contended, and against which equity, by reason thereof, will not enforce its terms. To this objection, Ingraham, J., in *Ferris* v. *Ferris*, 28 Barb. 31, has aptly replied: " It is urged that this a forfeiture, and that equity will always relieve a party against a forfeiture."

But it is a mistake to say that there is any forfeiture.

" The plaintiff's claim is for the money secured by the bond, and interest. There is nothing more claimed. The debtor owes the amount; he forfeits nothing; he is

required to pay nothing but his debt; there is no forfeiture to be relieved. If the bond had been conditioned to pay the money in one year, with an agreement to extend the payment a second year if the interest was paid within thirty days after it became due, no one would for a moment argue that there was any forfeiture; and yet that condition and the condition of the bond in suit are substantially the same. Nor can it be called a penalty; that is, a sum named as damages, to be recovered for violating an agreement or promise in lieu of damages. There is no such thing here. No damages are called for. Merely altering the day of payment is neither a forfeiture of any property nor a penalty in damages for the breach of any agreement." (*Ferris* v. *Ferris*, 28 Barb. 31.)

It is plain, then, that such contracts are regarded as valid, and will be enforced in equity according to their terms when a default occurs. But there must be a default, which, as Lush, J., says, "imports something wrongful; the omission to do something which, as between the parties, ought to have been done by one of them." And the omission to pay on the day specified will be such a default as will enforce a forfeiture of the time of the credit, unless it was occasioned by the acts or declarations of the holder of the mortgage, or the mortgagor can show some good excuse for it—such as mistake or accident or fraud. He who comes into equity must come with skirts clean and free from blame; for if the complainant who seeks to enforce the forfeiture of the time of credit is not free from fault, or guilty of conduct calculated to mislead the mortgagor and designed to prevent the payment of the interest on the day specified, the court will refuse to enforce the forfeiture of the time of credit. In *Noyes* v. *Clark*, *supra*, it was held that where a creditor keeps out of the way to prevent a tender of the amount due him, a suit commenced by such

creditor for the recovery of the debt will be stayed, upon payment of the amount due, without cost, although a technical right of action existed at the commencement of the suit.   The chancellor says:

"A court of equity, however, will not permit the mortgagee, or his assignee, to take an unconscientious advantage of the mortgagor who is willing to pay at the time prescribed, but who is unable to do so in consequence of the act of the other party; especially where there is reason to believe the default in payment was the result of a mere trick to defraud the mortgagor of his rights, by depriving him of the power of making the payment at the time prescribed.   In this case, it is evident that the defendant, Clark, was both ready and willing to pay the interest on his bond and mortgage on the day it became due, and if the assignee did not intentionally deprive him of the power of doing so, by keeping out of the way and concealing his place of residence, he transacted the business of the assignment in such an unusual manner as to produce the same result."

In *De Groot* v. *McCotter*, *supra*, it was held that the court will not enforce a forfeiture of the credit if the complainant himself is in fault, or has misled the defendant. In this case, there was a parol agreement as to the place of payment, and the complainant promised to call at this place, but declined to give the number and street of his residence.   Afterwards, upon suit brought by the complainant, the defendant claimed there was no default under the circumstances, as the complainant failed to call at the place appointed, etc.   And in the course of opinion, Dalrimple, J., says:

" I think it, therefore, fair to say that the complainant, by his own conduct, prevented a strict tender. . . . . He is here asking the enforcement of a forfeiture according to the letter of the bond.   We cannot grant this

prayer, because it does not appear that he is without fault. . It is not necessary to consider whether, as insisted by the defendant, the complainant acted in bad faith, or from a mere mistaken notion of his legal right. In either event, the result was the same—to mislead the defendant." (See also *Wilson* v. *Bird, supra.*)

These references are sufficient to show the principle upon which courts of equity will interfere and relieve the defendant from the forfeiture of the time of the credit. Now, passing to the facts, what is the state of the case as disclosed by the evidence? At the time the note and mortgage were executed, both parties resided in this county, and the place of payment was at Salem. Subsequently the complainant removed to Portland, and resided there when the installment of interest fell due. The evidence shows that the complainant was extremely anxious to secure the payment of the whole debt, and endeavored to bring about some negotiation to effect that purpose.

Now, it is clear to my mind, failing in this as she did, that she was determined to take advantage of any circumstance, and to entrap the defendant in any way she could, so as to claim a default, and enforce the forfeiture of the credit. Several days prior to the date when the interest fell due, the defendant wrote to her, inquiring to whom he should pay the interest at Salem; or, if she would prefer it, that he would send her a check for the amount. In doing this, he was simply seeking honestly to keep the performance of his contract, and at the same time, if she preferred it, to save her the trouble and expense of coming to Salem. It was an easy matter for her to have answered his letter, either stating she would be there, and where, or designating some person or bank to receive it, or authorizing him to send his check, as might be her pleasure. Honesty and fair dealing required that letter to be answered, but she did not do it,

but purposely and advisedly refrained from answering, to produce the result which followed. She neither came to Salem, nor designated any person or bank to receive it for her. More: she did not intend to do either. It would not do for the defendant to incur the risk of going to Portland, for that was not the place of payment; and to do that from his place of residence in the county, by the most rapid means of locomotion, he could not return before late in the evening, when, practically, he would have been in default. The defendant did the only thing he safely could do—came to the place appointed by the contract for the payment of the interest. It is not questioned but what he had the money, or that his credit at the bank was not such that the payment could have been effected at any moment; nor that he was not at the proper place, ready and willing to meet his engagement. But the complainant was not there, either in person or by proxy, and designedly so. The object manifestly was to lead him to suppose that the complainant would be there, when the purpose was to remain away, and thus keep him in waiting until the hour for the late train should have passed, when practically he would be in default, or the hour would be too late to arrange for a deposit of the money. There was in this conduct, and in that which preceded it, viewed in the light of all the circumstances, a manifest intention to mislead him. To my mind, there is no difference in such cases from the cases already referred to, where the party kept out of the way, or concealed the place of his residence, to deprive the mortgagor of the power of making the payment at the time prescribed. He was not shirking his obligation, but honestly trying to perform it, and only prevented from doing it by artifice. In such case, there was not a default in the sense of a wrongful omission to do what had been contracted to be done, for the result pro-

duced originated in the misconduct of the complainant, and for the consequences of which the defendant ought not to be made to suffer. This was not a contract which by its terms made the failure to pay the interest at the day specified work a forfeiture of the credit as to the whole debt absolutely, as in many of the cases, but only at the option of the complainant—a circumstance which is to be considered in connection with the case in the light of all the evidence, and the conduct of the defendant immediately afterwards in sending checks for the interest.

WALDO, C. J. (dissenting). This may be stated to be a contract, substantially, to pay money at a day certain, with a condition to pay at an earlier day if the debtor shall fail to do a certain act. The plaintiff alleges the happening of the contingency on which the money was to be paid at the earlier day, and claims the payment provided for in that case by the contract. The case turns on the happening or not happening of the contingency—or is the debtor in default? If so, the case is at an end.

The parties have expressly agreed that, on a certain contingency, payment shall be made at the earlier day. The contingency relates only to the day of payment. In either case, there is a debt to pay, and the payment is the payment of a debt, and not of a penalty. Thus in *Stevens* v. *Beck*, 1 DeG. J. & S. 595, S. C., 11 Week. Rep. 591, where a mortgage provided for the payment of sums by installments, and contained a stipulation for the payment of the whole sum in default of payment of any such installment, it was held by the lord justices, reversing the judgment of St. John Stuart, V. C., that such provision was binding, and was not in the nature of a penalty. (*Peachy* v. *Somerset*, 2 White & Tudor's Lead.

Cas. Eq. 1082; *Crane* v. *Ward,* Clarke Ch. 393; *People* v. *Superior Court,* 19 Wend. 104; Coulter, J., in *Mayo* v. *Judah,* 5 Munf. 500; *Basse* v. *Gallegger,* 7 Wis. 442; S. C.,· 76 Am. Dec. 225.) There is no room in such a case for a court of equity to put an equitable construction upon the contract, and thereby make it other than what the parties themselves have expressly made it. Bramwell, B., in *Preston* v. *Dania,* L. R. 8 Exch. 20, is of opinion that equitable interference with the agreements of parties has already been carried beyond sound principle.

Now, the plaintiff was, on the day of payment, and long prior thereto, a resident of Portland, and this fact was known to the defendant. Therefore, either of two courses was open to him to avoid a default: 1. To be ready with the money at Salem to pay at the day; or 2. To tender payment at the day to the plaintiff in Portland. He did neither. There seems to have been nothing to prevent him doing the one or the other. A default is the inevitable result. A few days before the money was to fall due, the defendant wrote a letter to the plaintiff at Portland, inquiring where he should make payment. There is no evidence that the letter was received, but on the contrary, there is evidence that it was not; for the defendant testifies that the letter was returned to him through the post-office, as he supposed, by the postmaster at Portland, in pursuance of a direction on the envelope in case of non-delivery. If it had been received and remained unanswered, it would have amounted to nothing, for the law gave the defendant directions what to do. The plaintiff was under no legal obligation to be at Salem to receive the money. If the defendant had been there with the money ready to pay, it would have been equivalent to a tender, and prevented a default. But he was not there, and as to the other steps open to him, the case stands as if there had been no place of payment named

in the note. It was the defendant's duty in that case to seek the plaintiff at Portland, and to tender her the money.

Thus in *Cheney's Case*, 3 Leon. 260, the law is stated to be that if "A is bound to deliver ten bushels of wheat, and no place is limited where the payment shall be made, the obligor is not bound to seek the other party. wheresoever, as in case of payment of money; for the importableness of it shall excuse him." In *Cranley* v. *Hillary*, 2 Mau. & Sel. 122, Dampier, J., said: "It is laid down by Littleton that the obligor of a bond conditioned for the payment of money at a particular day is bound to seek the obligee, if he be in England, and at the set day to tender him the money; otherwise, he shall forfeit the bond." (And see *Smith* v. *Smith*, 1 Hill (N. Y.), 351.) "He that pleads an excuse must show that he did all that he could possibly." (*Turnor* v. *Goodwin*, Fortesc. 150.) The defendant did nothing but write the letter above mentioned. The plaintiff did nothing; she remained silent, as she had a strict right to do. It is equally certain that the plaintiff was not ready at Salem with his money to pay at the day. Such readiness is considered equivalent to a tender of the sum payable. (*Hills* v. *Place*, 48 N. Y. 520.) He should have had his money at Salem ready to pay at the day if demanded. (*Fenton* v. *Goundry*, 13 East, 459; *Caldwell* v. *Cassidy*, 8 Cow. 271; *Salt Springs Nat. Bank of Syracuse* v. *Burton*, 58 N. Y. 430.) As to cases where a note is payable at a city at large, see *Boot* v. *Franklin*, 3 Johns. 208; *Covington* v. *Comstock*, 14 Pet. 43. A tender after the day is insufficient. (*Hume* v. *Peploe*, 8 East, 168; 2 Parsons on Contracts, 770, note.) In a social point of view, the conduct of the plaintiff may not have been commendable, but with that we have nothing to do. "As to the mischief which may ensue by this, it matters not; for it might have been prevented by provi-

dence of the parties, and the inconvenience which may happen to them must not alter the law." (*Dekins* v. *Latham*, Style, 317.)   Lord Mansfield said, in *Pray* v. *Edie*, 1 T. R. 314, speaking of a very incommendable defense: "This is a matter for his consideration, and not for mine."

I am of opinion that the decree ought to be reversed.