Snyder v. Foster.

## SNYDER V. FOSTER et al.

1. **Counties: UNLAWFUL EXPENDITURE OF MONEY : RIGHT OF ACTION TO ENJOIN.** A tax-payer may maintain an action in his own name to prevent unlawful acts by public officers, which would increase the amount of taxes he is required to pay, or diminish a fund to which he has contributed. (See opinion for citations.) Accordingly, *held* that an action may be maintained by a tax-payer to prevent the county officers from paying out money on a contract for the erection of a bridge which the county had no legal authority to erect.

2. —————— : POWERS OF SUPERVISORS : BRIDGES OVER NAVIGABLE LAKES. Boards of supervisors have no power to construct bridges over navigable lakes, no such power having been conferred by statute upon them; consequently county funds cannot be appropriated to the payment of claims arising from the construction of such a bridge under contract with the county; and the fact that the bridge is furnished with a draw to admit the passage of boats makes no difference. (See opinion for discussion of the point on principle and authority by ROBINSON, J.)

*Appeal from Dickinson District Court.*—HON. GEORGE
H. CARR, Judge.

FILED, MAY 23, 1889.

ACTION in equity to enjoin defendants from audit-
ing, allowing or paying claims for the building of a
bridge across a navigable lake. A demurrer to the
petition was overruled, and, defendants refusing to
further plead, a decree was rendered in favor of plaintiff
as prayed. The defendants appeal.

*Soper & Allen*, for appellants.

*Parker & Richardson*, for appellee.

ROBINSON, J.—Plaintiff is a resident and tax-payer
of Dickinson county, and defendants are the said county,
its auditor, treasurer, the members of its board of super-
visors, and the person who contracted to build the
bridge in controversy. The contractor did not appear
in the district court, and the cause was there continued,
as to him, for service. He is not therefore a party to
this appeal. On the nineteenth day of June, 1888, the
board of supervisors of Dickinson county ordered the
construction of a public bridge across a navigable body
of water known as "East Okoboji lake," and on the
first day of the next August entered into a contract for
the building of the bridge for the price of forty-nine
hundred dollars. The contract required the bridge to
be eleven hundred feet long and sixteen feet wide; to be
constructed with a draw, which could be opened for
the passage of boats, and which would furnish the only
means for the passage of boats through the bridge. A
highway has been established on each side of the lake to
points which the bridge is designed to connect, but no
highway has been located where it is proposed to build the
bridge, and no proceedings have been instituted for that
purpose. No special act of congress or of the general
assembly of the state of Iowa, giving authority to the

board of supervisors of Dickinson county to construct a
bridge over the lake named has ever been passed. It is
shown that, unless restrained by order of court, the
funds of said county will be appropriated and used by
defendants in paying for the bridge in question.

I. It is claimed by appellants that plaintiff is not
entitled to maintain this action, for the reason that he
has no interest to subserve excepting that
shared in common by other tax-payers, and
because the state of Iowa alone has the right
to object to the building of the bridge over
its navigable waters. The case of *Bell v. Foutch*, 21
Iowa, 132, is cited to support the claim, but it does not
decide the question involved in this case, and is not in
point. Plaintiff does not ask that the building of the
bridge be enjoined, but seeks to prevent the appropriation
of county funds for a purpose which he alleges to be
illegal. It is well settled that a tax-payer may maintain
an action in his own name to prevent unlawful acts by
public officers, which would increase the amount of
taxes he is required to pay, or diminish a fund to which
he has contributed. 2 High, Inj., sec. 1560; *Hospers v.
Wyatt*, 63 Iowa, 265; *Cornell College v. Iowa County*,
32 Iowa, 520; *Carthan v. Lang*, 69 Iowa, 384. In
our opinion the claim of appellants is not well founded.

II. It is conceded by appellants "that the beds of
all navigable waters in the western states belong to the
state wherein situated, and not to the
United States." See *Gilman v. Philadel-
phia*, 3 Wall. 713, and cases therein cited.
States have power to authorize the construction of
bridges over navigable waters within their limits until
congress intervenes and supersedes their authority.
*Cardwell v. Bridge Co.*, 113 U. S. 205; 5 Sup. Ct. Rep.
423. It is not claimed that congress has ever assumed
control of the lake in question. We are therefore
required to determine whether the general assembly of
Iowa has conferred upon boards of supervisors authority
to build bridges across the navigable lakes within the
state. Where not otherwise provided by statute, all

*Marginal notes:*
1. COUNTIES: unlawful expenditure of money: right of action to enjoin.

2. ——: powers of supervisors: bridges over navigable lakes.

navigable waters of a state are public property for the use of all citizens, and cannot be obstructed without legislative sanction. *Commonwealth v. Inhabitants of Charlestown*, 1 Pick. 185, and cases therein cited; *Commissioners v. Board of Public Works*, 39 Ohio St., 634; Gould, Waters, sec. 139, and notes. Section 303 of the Code authorizes boards of supervisors "to alter, vacate or discontinue any state or territorial highway within their respective counties; to lay out, establish, alter or discontinue any county highway heretofore or now laid out, or hereafter to be laid out, through or within their respective counties, as may be provided by law; to provide for the erection of all bridges which may be necessary, and which the public convenience may require, within their respective counties, and to keep the same in repair." We understand counsel for appellants to rely upon these provisions as conferring upon boards of supervisors the authority in controversy. Section 1001 of the Code provides that "bridges erected or maintained by the public constitute parts of the highway, and must not be less than sixteen feet in width." It is evident that such a bridge cannot be constructed where a highway cannot be established. Before a highway can be established, the right to use the land over which it is to pass must be obtained for highway purposes. If it is not otherwise procured, notice of the proposed highway must be served on each owner or occupier of land lying within it or abutting thereon, as shown by the transfer books in the auditor's office, when such owner resides in the county, and it must also be published four weeks in some newspaper printed in the county. Code, sec. 936. Where such notice is not given, the highway cannot be established. *State v. Weimer*, 64 Iowa, 244; *State v. Anderson*, 39 Iowa, 275. It is well settled that no action or proceeding can be maintained against the state without its consent. *Chance v. Temple*, 1 Iowa, 201. It is not claimed that the provisions in regard to notice, to which we have referred, have any application to the state, and no steps have been taken to acquire a right to build the bridge

in question as against the state.   Appellants rest their
case upon the general statutes applicable to highways
and bridges.   It is true that boards of supervisors have
power to provide for the erection of all bridges "which
may be necessary, and which the public convenience
may require, within their respective counties," but they
can provide for the erection of such bridges only in
public highways.   They may establish highways only
" as may be provided by law."   But the law does not
authorize the establishment of a highway until the
right to use the land over which it is to pass for that
purpose has been obtained.   In this case the state holds
the title to the bed of the lake for the use and benefit of
its citizens.   It has not by express statute authorized
any obstruction of such use.   It was said in *Hickok v.
Hine*, 23 Ohio St. 523, that "powers in derogation of
the rights of individuals or of the public, conferred in
general terms upon corporations or public officers, must
be construed with some degree of strictness.   Where
the legislature has power to require one public easement
to yield to another more important, the intention to
grant such power must appear by express words or by
necessary implication.   Such implication can arise only
when requisite to the exercise of the power expressly
granted, and it can be extended no further than the
necessity of the case requires."   The rule thus expressed
seems to us to be sound, and supported by decisions of
acknowledged authority and value.   *Inhabitants of
Charlestown v. County Commissioners*, 3 Metc. 202 ;
*Commonwealth v. Coombs*, 2 Mass. 492 ; *Inhabitants of
Springfield v. Railway Co.*, 4 Cush. 71 ; *Attorney General v. Stevens*, 22 Amer. Dec. 531.

Chapter 93 of the Acts of the Seventh General
Assembly conferred upon the district courts power to
authorize the construction of bridges across the navigable
rivers of the state, and gave to county judges authority
to erect bridges over streams at points where they were
not navigable.   That chapter was incorporated in the
revision of 1860, with the act of the eighth general
assembly, which provided for boards of supervisors,

giving them the powers specified in the portions of section 303 of the Code which we have quoted. Revision, sec. 312. According to the ordinary rules of construction, the revision of 1860 gave to boards of supervisors no authority to build bridges over streams at places where they were navigable. The Code of 1873 dropped the provisions of the act of 1858, giving to the district courts jurisdiction to authorize bridges over navigable rivers, but enacted no substitute therefor. Boards of supervisors were, however, authorized to appropriate towards the construction of bridges across unnavigable rivers on county lines. Code, sec. 303, par. 24. They were also authorized to grant licenses for the erection of toll-bridges across any water-course or other obstruction which justifies the establishment of such bridge, in the language of section 1214 of the revision. Code, sec. 1003. But section 1215 of the revision, which authorized the construction of such bridges across navigable streams, seems to have been dropped. Boards of supervisors are authorized to designate the locations for, and any incorporated railway or bridge company may construct, railway bridges across the Mississippi, Missouri or Big Sioux river,' under prescribed regulations. Code, sec. 1031. And certain cities may construct or aid in the construction of bridges over navigable boundary rivers. Chapters 13 and 98, Acts 21st Gen. Assem. Section 1265 of the Code authorizes railway corporations to construct and carry their railways across, over or under any water-course when it may be necessary in the construction of the same. But our attention has not been called to any statute which in terms or by necessary implication refers in any manner to the building of bridges over navigable lakes. The navigable waters referred to in the statutes are such as are found in "rivers," "streams" and "water-courses." Much can be said in favor of the proposition that the general assembly has reserved to itself absolute control of all the navigable waters of the state not found in boundary rivers, but as to that we need not determine. In our opinion it is clear that the power has not been

delegated to boards of supervisors to construct bridges over the navigable lakes. The fact that the one in question was to be furnished with a draw for the passage of boats does not obviate the objection indicated. If constructed it would be an obstruction, even though not impassable. Since the construction of the bridge is contrary to law, county funds cannot be appropriated for that purpose. The decree of the district court is

AFFIRMED.