Bissell, J.,
delivered the opinion of the court.
This case is the outgrowth of that cause celebre known as the Millington case. The Millingtons were indicted for the murder of one Avery by the administration of poison. To determine the effects of certain poisons, the symptoms by. which they were manifested, and their resultant operations *178 on the physical system, necessarily became, an important subject of inquiry on the trial. It is impossible to ascertain from the present record exactly when, or under what circumstances, the appellee, Lee, was called as a witness, but it is easily gathered from the agreed state of facts on which the case was tried that, at some time during the progress of the trial, the district attorney applied to the court for an order to subpoena thirteen persons as expert witnesses to testify on these medical and toxicological questions. The witnesses were not subpoenaed, put on the stand or asked to testify prior to the time the order was made. Thejr came in obedience to the subpoenas, and in evident reliance upon the validity of the order voluntarily gave evidence touching the matters about which they were interrogated. They did not insist that their fees should be paid before testifying, nor did they refuse to testify on the ground that their professional opinions could not be sought without additional compensation. These latter distinctions are expressed to illustrate in the subsequent discussion the difference between the present case and the authorities relied upon by Lee to support his action. When the trial was concluded, Lee presented his claim to the board of county commissioners of Larimer county for fees at the rate of twenty-five (§25.00) dollars per day for thirteen days, and twenty cents per mile for seventy-five miles of travel. The board refused to allow this claim as presented, but did audit it at the sum of one dollar and fifty (§1.50) cents per day, and mileage at ten cents per mile, which are the rates and costs fixed by statute as the compensation of an ordinary witness attending a criminal trial. Thereafter, by regular statutoiy proceedings, the matter came before the district court for adjudication, and that court decided that the judge presiding over the trial of the Milling-ton case had power to make the order allowing these expert witnesses additional compensation, and rendered judgment against the county for the amount which Lee claimed. • The board brings the case here, and insists that no cause of ac *179 tion came to_plaintiff for his extraordinary compensation by reason of the order.
The question presented is one of first impression in this state. The subject has received judicial consideration in other tribunals, and the authorities are not uniform on the subject. Wherever the matter has been presented, it has come up under circumstances which show that the witness when subpoenaed refused to testify until his expert fees had been paid. The courts have then considered the question in the light of the right of a witness to refuse to express his professional opinions before he is paid an additional and greater compensation than that fixed by the statute as the pay of the ordinary witness, who testifies as to facts. This circumstance may possibly make no difference in the application of the rule, which will be announced; but it presents undoubtedly a very palpable distinction between those cases and the one at bar. The authorities which adjudge additional compensation to be the right of the expert, and which assert his privilege to refuse to testify until paid, are not in harmony as to the basis on which their conclusions are rested. Some declare that he is entitled to the extra pay because his professional opinions are his own property, which cannot be extracted from him except for an honorarium,' which shall be satisfactory to the witness; and others, on the ground that the time of a professional witness called as such has a value beyond that of a witness who is called to testify to a fact regardless of his business or his status.
The line of authorities adjudging the contrary are on reason and principle much more satisfactory, and would undoubtedly be followed by this court were the question presented under the identical aspect exhibited in those decisions. They hold that when a professional witness attends in obedience to an ordinary subpoena, he may be compelled to express his opinions on hypothetical questions, or on general medical and toxicological subjects, as an ordinary witness is compelled to testify on questions of fact within his knowledge and for the same statutoiy fees. The authorities un *180 doubtedly concede, as does this court, that if the witness be legally required to do any particular thing, as to analyze the contents of a stomach, or perform a post mortem operation —in these and similar cases, such services cannot be compelled by the ordinary process of subpoena, or the labor required by the payment of an ordinary witness fee. These exceptions, however, do not modify the general rule that the professional witness in the discharge of his duty as a good citizen is like any othér person, whether he be laborer, merchant, broker, manufacturer or banker, compellable to attend in obedience to process, and to testify as to what he may know, whether it be observed facts, or accumulated knowledge acquired by study and experience. The rule is a sound one and commends itself to our judgment. It is apparently nothing but a question of relative value, and it frequently happens that the loss of time is a less serious one to the .professional witness than to the person engaged in the more active business walks of life. Summers v. The State, 5 Texas Court of Appeals, 365; Ex parte Dement, 53 Ala. 389; State v. Teipner, 36 Minn. 535.
These conclusions do not entirely dispose of the present controversy. It still remains to be decided whether the court making the order, under the circumstances indicated, possessed the power to bind the county of Larimer to the payment of the fees expressed in the mandate.
It is a matter of common learning that costs are a creature of statute. In ancient times, neither in civil nor in criminal cases, did the plaintiff or the state have judgment for anything in the nature of costs. As Sir Edward Coke says in 2 Inst. 288, speaking of the statute of Glocester, 6 Edw. 1: —“Before this statute, at the common law, no man recovered costs of sute, either in plea real, personall, or mixt; by this it may be collected that justice was good cheap of auncient times, for in King Alfred’s time there were no writs of grace, but all writs remedialls were graunted freel)’'.” County of Franklin v. Conrad, 36 Pa. State, 317; Haynes v. Mosher, 15 Howard Pr. 216: Faulkner v. Handy, 79 Cal. 265; Mark et *181 al. v. The City et al., 87 New York, 184; Pugh v. Good, 13 Ore. 85; Person v. Ozark Co., 82 Mo. 491; Noyes v. The State, 46 Wis. 250.
The recovery cannot be supported by express legislative enactment, for none has ever been incorporated into the law of the state. In some states, notably Indiana and Iowa, where a similar controversy had arisen, the legislature remedied the difficulty and enacted a statute, granting to the judge who might preside at the trial power to allow to expert witnesses such additional compensation as, in his judgment, might seem reasonable. We gather from this fact, as well as from the character of the reasoning of the courts holding the other doctrine, that it was never a question entirely free from obscurity. It therefore follows that unless the court possessed the inherent power to enter an order of this description, it was without jurisdiction for the purpose, and the entry could give to the appellee, Lee, no right of action against the county. Nothing but an evident and an unavoidable necessity should lead to the conclusion that any such power is vested in the court. It is wholly unessential to the safe or successful administration of justice. Power to enforce the attendance of witnesses, and authority to compel them to testify to whatever they may know will, in the light of judicial experience, always suffice to conserve the purposes of justice. Wherever extraordinary expenditures seem prudent, necessary or indispensable, the legislature has clothed another and independent body with broad and ample authority to do whatever ought to be done. Under the statutory plan which divides the state into counties, and regulates the government of those territorial subdivisions, all power to fix, control, determine or in any manner dispose of the funds of a county is devolved on the board of county commissioners. They alone have the right to disburse the public moneys, and to decide in what cases, and under what circumstances, such funds shall be paid out, unless it be in those cases where fixed rights are conferred by statute. In and of itself, this fact should be decisive of the present in *182 quiry. Wherever a broad, universal and sweeping- power is thus given to a governing body, it cannot be conceded that by implication any other body, whether it be a court or one resembling the board of county commissioners should likewise have power to dispose of the public revenues. Under some circumstances, it might be very strongly argued that this power should be decided to be inherent in the court, since otherwise there is liable to be a manifest failure and miscarriage of justice, springing from the prejudices which -may infect the people of a county, or coming from an unusually economical and parsimonious board, which would prefer to see crime unpunished rather than the public revenues wasted. The present case, however, does not come with any such argumentative or possible exception. It is enough at present to say that the record does not show that there was any application to the board of county commissioners to contract with the witnesses, or to authorize the expenditure of the money. The application to the court was not based upon such facts, coupled with the showing that justice would manifestly miscarry if the order was not made. We, therefore, hold that, in a case like the present, the court was entirely without power to make an order which should bind the county, and give to the witness a cause of action for this extraordinary compensation. Since he is unable to point to any statute which gives him such fees, he must be satisfied with the compensation which the statute specifies, whether it be mileage or per diem.
■ The judgment which the court entered in favor of the. appellee, Lee, for twenty-five ($25.00) dollars per day and twenty cents for mileage is erroneous and must be reversed.

Reversed.