No. 9328.

LECKENBY ET AL. v. THE POST PRINTING AND PUBLISHING
COMPANY ET AL.

1. SALARY OF PUBLIC OFFICER—*Unlawful Increase.* The Constitution
provides that the salary of the Lieutenant Governor shall not
be increased during his official term. The officer keeping no
books, records, or office, and having no duties to perform except
to preside at the meetings of the Senate, *held* that an appro-
priation made by the Legislature to this officer, "for official or
semi-official purposes", was void.

2. —— *Mileage to Public Officer.* No official of the state except mem-
bers of the Legislature, and no county officials, except the
county commissioners, are entitled to an allowance for traveling
expenses.

3. APPROPRIATIONS—*Must be pursuant to law.* The compensation of
a public officer must be prescribed by statute before it can be
included in the general appropriation bill. So the expenses of
a public officer must be the subject of an express statutory al-
lowance, before an appropriation can be made therefor.

4. ILLEGAL APPROPRIATION—*Injunction.* A taxpayer may sue to re-
strain the payment of money under an appropriation made by
the General Assembly in violation of the Constitution; and the
District Court may award the injunction.

5. CUSTOM—*Unlawful allowance to a public officer,* is not justified or
excused by a custom to make such allowance to his predecessors.

*Error to Denver District Court, Hon. Charles C. Butler,*
*Judge.*

Mr. T. J. O'DONNELL, Mr. CANTON O'DONNELL, for plain-
tiffs in error.

Mr. JOHN A. RUSH, Mr. FOSTER CLINE, for defendant in
error.

Mr. Justice Garrigues delivered the opinion of the court:

This is an action in equity, by an individual taxpayer, to
restrain the State Auditor and State Treasurer from pay-
ing out money from the State Treasury to the Lieutenant-
Governer upon an appropriation made by the Legislature.

At the time of the matters complained of herein,
plaintiff in error, James L. Pulliam, was Lieutenant Gov-

ernor of Colorado, Charles H. Leckenby was State Auditor, and Robert H. Higgins was State Treasurer. Pulliam, as ex-officio president of the Senate, presided over the Senate of the 21st General Assembly in 1917. The Legislature at this session appropriated for the *per diem* of its officers, and to pay the members and employees thereof the total sum of $215,000, and for printing and other miscellaneous expenses, the sum of $38,000, and for the salary of Pulliam as Lieutenant Governor, $2,000 for the biennial period of 1917 and 1918. In addition to these appropriations there was included in the General-Short appropriation bill the following item: "Lieutenant Governor's incidental and office expenses, for official or semi-official purposes to be determined by him, $166.66." And in the General-Long appropriation bill this item: "Lieutenant Governor's fund for official or semi-official purposes to be determined by him for the biennial period, $1,000, less amounts already paid from the Short appropriation."

The present suit was brought by a taxpayer to have this appropriation adjudged void, and the prayer of the complaint is for a temporary writ, to be made permanent on final hearing, enjoining the payment of this $1,000.

Demurrers to the complaint upon the ground that plaintiff has no capacity to maintain the suit, and that the complaint does not state facts sufficient to constitute a cause of action were overruled, and defendants elected to stand thereon.

Thereupon, judgment was entered for plaintiff in accordance with the prayer of the complaint, and the state officers were restrained from issuing or paying any warrant to Pulliam, under and pursuant to that clause in the appropriation bill which reads: "Lieutenant Governor's fund for official or semi-official purposes to be determined by him for the biennial period, $1,000."

The Constitution provides that:

Art. 4, sec. 1:

The Lieutenant Governor shall hold his office for the term of two years, and shall perform such duties as are prescribed by the Constitution, or by law.

Art. 4, sec. 14:

The Lieutenant Governor shall be president of the Senate, and shall vote only when the Senate is equally divided.

Art. 4, sec. 13:

In case of the death or disability of the Governor, the powers, duties, and emoluments of the office of Governor shall devolve upon the Lieutenant Governor.

Art. 4, sec. 19:

The Lieutenant Governor shall receive for his services a salary to be established by law, which shall not be increased or diminished during his official term.

Art. 5, sec. 27:

The General Assembly shall prescribe by law the compensation of the officers and employees of each House.

Art. 5, sec. 28:

No bill shall be passed providing for the payment of any claim against the state without previous authority by law, or giving extra compensation to any public officer after services shall have been rendered.

Art. 5, sec. 30:

Except as otherwise provided by the Constitution, no law shall increase or diminish the salary or emoluments of any public officer after his election or appointment.

Art. 5, sec. 9:

No member of either House shall receive any increase of salary or mileage under any law passed during the term for which he may have been elected.

Art 5, sec. 34:

No appropriation shall be made for charitable or beneficial purposes to any person.

Art. 5, sec. 33:

No money shall be paid out of the Treasury, except upon appropriations made by law.

Art. 5, sec. 32:

The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the state, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject.

The Statutes provide that:

S. L. (1883), sec. 1, p. 191:

The Lieutenant Governor shall receive an annual salary of $1,000.

R. S. (1908), sec. 6153:

Whenever the powers and duties of the office of Governor shall devolve upon the Lieutenant Governor, the salary of the Governor shall cease, and the same shall be received by the Lieutenant Governor as a full compensation for his services.

S. L. (1909), p. 314:

Each member of the General Assembly shall receive $1,000 as compensation for his services for each biennial period, and all actual and necessary traveling expenses, and the members of the General Assembly shall receive no other compensation, perquisite, or allowance whatever.

Garrigues, J., after stating the case as above:

1. The only public duty of the Lieutenant Governor, when the Legislature is in session, is to preside over the Senate, for which services he is entitled to a salary of $1,000 per annum, or $2,000 for the biennial period. He has no public duty to perform during the intermission between sessions. The extra $1,000 allowed in the appropriation could not have been for his compensation because that was already provided for in the bill, and if it was intended as an increase in salary, it was unconstitutional.

2. The claim is made that it was for his expenses. But what expenses? He has no office, books, records, or papers to keep or care for. In his official capacity as Lieutenant Governor, he has no acts to perform for the public, except to go to the Capitol, preside over the Senate, and return

home, and when it adjourns *sine die,* his duties with the public service cease. He has no expenses which are made a charge against the state. While the Legislature is in session, an office is furnished him free at the Capitol, and the appropriation of $38,000 to pay for printing, stationery, stamps, supplies, and miscellaneous expenses, include him while presiding over the Senate, with the officers and members of the Legislature; and when acting as Governor, he is entitled to the pay and emoluments of the Governor. As Lieutenant Governor, he has no official or semi-official duties to perform other than to preside over the Senate.

3. But it is said the appropriation may have been intended for mileage, and that the court cannot question the intent of the Legislature. There is no law authorizing him to take mileage. Mileage of the Lieutenant Governor is not made a charge against the state. He is allowed no mileage. If he could take mileage, then all the state officials could as well take mileage. He is required to come to the Capitol and return home at his own expense, and if the state pays his traveling expenses, it is an increase in his compensation. No state officials except members of the Legislature, and no county officials except county commissioners, are entitled to take mileage.

Any public officer demanding mileage, emoluments, fees, costs, or expenses, must point out some statute authorizing its allowance.

*Denver v. Meyer,* 54 Colo. 96, 129 Pac. 197; *McGovern v. Denver,* 54 Colo. 411, 131 Pac. 273; *Board of County Commissioners v. Lee,* 3 Colo. App. 177, 32 Pac. 841; *Fremont Co. v. Wilson,* 3 Colo. App. 492, 34 Pac. 265; *Stevens v. Sedgwick Co.,* 5 Colo. App. 116, 37 Pac. 948; *Troup v. Morgan Co.,* 109 Ala. 162, 19 South. 503; *Yeager v. Com.,* 95 Ind. 427; *Wood v. Com.* 125 Ind. 270, 25 N. E. 188; *Legler v. Paine,* 147 Ind. 181, 45 N. E. 604; *Board of County Commissioners v. Buchanan,* 21 Ind. App. 178, 51 N. E. 939; *State v. Wofford,* 116 Mo. 220, 22 S. W. 486; *State v. Brown,* 146 Mo. 401, 47 S. W. 504; *Bates v. City,* 153 Mo.

18, 54 S. W. 439, 77 Am. St. Rep. 701; *State v. Adams,* 172 Mo. 1, 72 S. W. 655; *State v. Silver,* 9 Neb. 85, 2 N. W. 215; *Bayha v. Webster Co.,* 18 Neb. 131, 24 N. W. 457; *Red Willow Co. v. Smith,* 67 Neb. 213, 93 N. W. 151; *Hall v. Hamilton,* 74 Ill. 437; *Fergus v. Russel,* 270 Ill. 304, 110 N. E. 130, Ann. Cas. 1916B, 1120; *State v. Cheetham,* 21 Wash. 437, 58 Pac. 771; *Torbert v. Hale Co.,* 131 Ala. 143, 30 South, 453; *Jefferson Co. v. Waters,* 114 Ky. 48, 70 S. W. 40; *State v. Raine,* 49 Ohio St. 580, 31 N. E. 741.

Mileage or traveling expenses paid to the Lieutenant Governor would clearly come within the term "compensation," because, unless the state paid it, he would have to pay it himself. Therefore, if intended to cover mileage, it would be an increase in his compensation, and unconstitutional.

4. The general appropriation bill can only provide for meeting charges already created against the public funds by affirmative acts of the Legislature. The compensation of Lieutenant Governor should first be prescribed by affirmative legislation before it can be included in the general appropriation bill, and there must be a law permitting expenses to be incurred before they can lawfully be paid out from the State Treasury. A law must be enacted providing for its allowance before the compensation or expenses of state officials can be included in the general appropriation bill.

*People, ex rel. v. Spruance,* 8 Colo. 307, 6 Pac. 831; *In re Appropriations,* 13 Colo. 316, 22 Pac. 464; *Lithographing Co. v. Henderson,* 18 Colo. 259, 32 Pac. 417; *In re House Bill,* 21 Colo. 46, 39 Pac. 1096; *Parks v. S. & S. Home,* 22 Colo. 86, 43 Pac. 542; *In re Senate Bill,* 23 Colo. 508, 48 Pac. 540.

5. We know of no contingency by which the Lieutenant Governor can lawfully take additional compensation above the $2,000 salary allowed by law. There are no official or semi-official purposes for which he may lawfully use any part of this appropriation. It is additional compensation,

and is in violation of the Constitution and Statutes. The Constitution provides that no money shall be paid out of the State Treasury except upon appropriations made by law. No matter about the terms employed in the bill, that is immaterial, the appropriation was not made by law. The effect of it is to increase the allowance, salary or compensation of the Lieutenant Governor in violation of law, and the appropriation is void.

6. The claim is made that the District Court could not, at the suit of an individual taxpayer, interfere by injunction to restrain the State Auditor from drawing, and the State Treasurer from paying, warrants upon the appropriation. No doubt some courts have so held, but the weight of authority is to the contrary. Moreover, we are committed to a contrary doctrine in regard to municipal and county officials, and we see no legitimate distinction in state officials. State officials cannot be interfered with by the courts in the exercise of their discretion in matters of a political or executive character, but drawing and paying warrants upon an appropriation made by the Legislature is of a ministerial business or financial character, without the exercise of discretionary powers, and is not of a political or executive character.

7. A private individual taxpayer may resort to a court of equity to restrain by injunction the misapplication of public funds from the State Treasury, or enjoin the payment of a void appropriation upon the ground that the act making the appropriation is unconstitutional.

*Packard v. Board of County Com'rs*, 2 Colo. 338; *Nelson v. Garfield Co.*, 6 Colo. App. 279-283, 40 Pac. 474; *Littler v. Jayne*, 124 Ill. 123, 16 N. E. 374; *Burke v. Snively*, 208 Ill. 328, 70 N. E. 327; *Fergus v. Russel*, 270 Ill. 304, 110 N. E. 130, Ann. Cas. 1916B, 1120; *Terrell v. Middleton* (Tex.) 187 S. W. 367; *Ellingham v. Dye*, 178 Ind. 338, 99 N. E. 1, Ann. Cas. 1915C, 200; *Christmas v. Warfield*, 105 Md. 531, 66 Atl. 491; *State v. Pennoyer*, 26 Or. 205, 37 Pac. 906, 41 Pac. 1104, 25 L. R. A. 862; *McKinney v. Watson*, 74 Or. 220,

145 Pac. 266; *Snyder v. Foster*, 77 Iowa 638, 42 N. W. 506; *Goetzman v. Whitaker*, 81 Iowa 527, 46 N. W. 1058; *Crawford v. Gilchrist*, 64 Fla. 41, 59 South. 963, Ann. Cas. 1914B, 916; *Martin v. Ingham*, 38 Kan. 641, 17 Pac. 162; *Hailey v. Huston*, 25 Idaho 165, 136 Pac. 212; *Mott v. Penn. R. R. Co.*, 30 Pa. 9, 72 Am. Dec. 664; *State v. Raine*, 49 Ohio St. 580, 31 N. E. 741.

8. Because the Lieutenant Governor is underpaid, and it has always been the custom to make such an allowance to the preceding Lieutenant Governors of this State, is no warrant for the present act. A wrong cannot be transformed into a virtue or sanctioned by age and acquiescence. A power may be long exercised in violation of the Constitution, but this does not authorize its infraction.

*Judgment affirmed.*

Decision *en banc*.