THE C. B. U. P. RLD. CO. v. JAMES SMITH, *Treasurer, et al.*

1. BONDS ISSUED UNDER CH. 51, LAWS OF 1873, *Void.* In 1873 the legislature enacted a special law, (ch. 51, Laws of 1873,) purporting to authorize Blue Rapids township to take stock in and issue bonds to the Irving Manufacturing Company, a corporation then organized, whose purpose, as expressed in its charter, was " to purchase all needed lands and construct and maintain a dam across the Big Blue river, within two miles of Irving, and build and maintain mills and their machinery for manufacturing purposes." Bonds were thereafter voted and issued, reciting on their face that they were issued to said corporation and in pursuance to said act, whose title and date of approval were given. *Held,* In an action to restrain the collection of taxes levied for interest on said bonds, that the law was unconstitutional as authorizing public aid to purely private purposes, and that therefore the bonds issued in pursuance of said law were void.

2. RECITAL IN BOND ; *Notice to Purchaser.* Where a bond is issued which recites that it is issued in pursuance of a certain act, which act purports to grant authority to issue bonds to a given party, every purchaser of said bond takes with notice of all contained in the act and of any inherent incapacity in the party named to receive public aid.

3. GRANT OF AID, *to be for a Public Purpose.* An attempted grant of public aid, to an individual, or a private corporation, cannot be sustained unless upon the face of the law or record it appears that the grant is to

subserve some public purpose. The silence of the law, as to the purpose of the grant, makes against its validity.

4. ——— *Estoppel.* While a municipality may be estopped from showing wrongful acts done under a valid law, there is no such thing as a void enactment being made valid by estoppel.

5. LAW AUTHORIZING PUBLIC AID TO TWO OR MORE OBJECTS, *Valid or Void, When.* Where a law authorizes public aid to two or more objects, it may be valid and upheld as to one of those objects, and void and fail as to another; but where it purports to authorize such aid to a single object, as, for instance, a named corporation, the object as an entirety must be public or the law will fail. Thus, where a corporation named as the recipient of public aid, by the generality of its charter is enabled to engage in works of a private as well as in those of a public character, a general grant of public aid to it cannot be sustained, for it then remains a matter of its own election whether it will use such aid for public or private purposes.

6. BOND, *Valid or Void, When.* Where a bond purports upon its face to be issued under authority of a special act, it will, as a rule, be invalid if that act is unconstitutional; and where it is sought to uphold the bond by virtue of authority given in some other law, it must appear, to sustain the bond even in the hands of a *bona fide* holder, that the terms of said second law have in fact been complied with, and that the bond is in fact legal and valid, as issued in aid of some public and authorized purpose.

### *Error from Marshall District Court.*

ACTION begun by the *C. B. U. P. Rld. Co.*, against *James Smith*, as treasurer, and *John B. Logan*, as sheriff of Marshall county, Kansas, *The Township of Blue Rapids*, in the county of Marshall, *The Irving Manufacturing Company*, and *Satterlee Warden*, to enjoin the issue and service of a tax warrant against the railroad property of the plaintiff, for a certain imposition specified on the tax roll of said county for 1877 as "Blue Rapids township improvement bond tax," and amounting to $265.10. Trial by the court, at the December Term, 1878, and findings and judgment for the defendants. New trial denied, and the plaintiff brings the case to this court. The opinion contains a sufficient statement of the facts.

*Everest & Waggener*, and *D. Martin*, for plaintiff in error.

*A. E. Park*, and *A. L. Williams*, for defendants in error.

The opinion of the court was delivered by

BREWER, J.: On January 19, 1878, the plaintiff commenced its action against the defendants in the district court of Marshall county, to enjoin the issue and service of a tax warrant against the railroad property of the plaintiff for a certain imposition specified on the tax-roll of said county for 1877 as "Blue Rapids township improvement bond tax," and amounting to $265.10. This cause came on for hearing at the December term, 1878, and the court made its findings of fact and conclusions of law thereon, and the plaintiff excepted to said conclusions of law, and each of them.

These findings show the following facts material for the consideration of the questions involved in this case:

On February 10, 1873, the charter of the Irving Manufacturing Company was filed in the office of the secretary of state for the state of Kansas, and said company thereby became a corporation, with an authorized capital stock of $25,000, its declared purpose being "to purchase all needed lands and construct and maintain a dam across the Big Blue river, within two miles of Irving, and build and maintain mills and their machinery for manufacturing purposes."

The legislature of 1873 passed an act entitled "An act to provide for issuing bonds of Blue Rapids township, of Marshall county," approved March 4, 1873, purporting to authorize the township officers of Blue Rapids township to subscribe to the capital stock of said Irving Manufacturing Company not to exceed the sum of $10,000, and to pay for the same by issuing the bonds of said township, payable in ten years from their date, with interest at ten per cent. per annum, payable annually, according to interest coupons to be attached. The act required the question of the issue of bonds to be submitted to a popular vote, and in case of the authorization and issue of said bonds, the township officers, in connection with the board of county commissioners, were required to levy a tax annually for the payment of interest and the creation of a sinking fund for the redemption of the bonds

at maturity. It was made the duty of the trustee to attend the meetings of the stockholders of the company, and to act for the township and represent its stock, and he was made eligible as a director of the company. (Laws 1873, ch. 51, pp. 103, 104.)

On June 30, 1874, and after a favorable popular vote, the trustee and the clerk of said township issued the bonds, ten in number, for one thousand dollars each, with interest coupons attached, all being of the same date and of like tenor and effect. The following is a copy of one of the bonds and the first coupon thereon, to wit:

No....                                    BOND
OF BLUE RAPIDS TOWNSHIP, MARSHALL COUNTY, STATE OF KANSAS.

Be it known, that Blue Rapids township, in the county of Marshall, and state of Kansas, is indebted to the Irving Manufacturing Company, or bearer, in the sum of one thousand dollars, bearing interest at the rate of ten per cent. per annum, payable annually, on the first day of July, at the office of the treasurer of the said Blue Rapids township, in said Marshall county, Kansas, and for which coupons are hereto attached.

This bond is issued in pursuance of an act of the legislature of the state of Kansas, approved March 4, A. D. 1873, entitled "An act to provide for issuing bonds of Blue Rapids township, of Marshall county," the principal of which is payable ten years from July 1st, A. D. 1874, and for the payment of which the faith of said Blue Rapids township is pledged.

In testimony whereof, this bond hath been issued and signed by the township trustee, and countersigned by the clerk of said township, this 30th day of June, A. D. 1874.

    (Signed)               THADDEUS DAY, *Trustee.*
    (Countersigned)          JOHN THOMPSON, *Clerk.*

[Coupon.]
BOND OF BLUE RAPIDS TOWNSHIP, MARSHALL COUNTY, KANSAS.

$100.—On the first day of July, A. D. 1875, Blue Rapids township will pay one hundred dollars for interest on bond No...., agreeable to an act approved March 4, 1873.

    (Signed)               THADDEUS DAY, *Trustee.*
    (Countersigned)          JOHN THOMPSON, *Clerk.*

On May 28, 1874, the Irving Manufacturing Company en-

tered into a written contract with one Satterlee Warden, by which Warden agreed to build a dam across the Big Blue river, on section one, township five, range seven, in Marshall county, and also a mill building, fitted up with grist-mill machinery, the work to be commenced as early as September 1, 1874, and completed on or before December 30, 1875; and the manufacturing company agreed to convey to Warden a certain described tract of land owned by it in said section, to include said improvements, and also the water power, with the reservation and exceptions following: The company to have the right to build mills and manufactories, to be propelled by said water power, below Warden's mill, and also a flume for said mills and manufactories, but not to engage in the grinding of grain without the written consent of Warden, and in any event Warden should have sufficient power to propel six run of stones, and also a saw mill, if he should build one in two years; and whenever the company should build a mill or manufactory, it was to pay to Warden one-fourth of the cost of the dam for each of said mills or manufactories, until the whole sum advanced by Warden in the building of the dam should be refunded to him; and the expense of maintaining a dam should be borne equally by the mills using the same.    And it was further agreed that the company should pay and deliver to Warden $10,000 in Blue Rapids township bonds, if they should be voted, as soon as Warden should expend $5,000 in said improvements, and give security for the completion thereof; but after the completion of the dam and the basement of the mill, Warden might, if he chose, return the township bonds to the company and demand and receive from it $3,000 in money, in lieu thereof.

Warden completed said improvements in September, 1875, in accordance with said contract, and the bonds were transferred and assigned to him by the company before that time, in pursuance of the agreement.    Ever since the completion of the mill it has been used as a custom grist mill chiefly, the proprietors purchasing some wheat, however, to complete car-loads of flour made principally from the grinding of tolls.

On February 7, 1876, the company executed to Warden a deed in accordance with said contract and the reservations therein contained, but it was provided in the deed that the acceptance of it by Warden should not operate as a waiver of his right to return the $10,000 in township bonds to said company and to demand and receive $3,000 in money therefor. Warden has sold and transferred the bonds to persons unknown, who are innocent holders thereof. No manufacturing enterprise has ever been carried on or engaged in by the Irving Manufacturing Company, nor is the water power from the dam used for any other purpose than the propelling of the machinery of said grist mill.

The question presented by these facts is, as to the validity of the bonds. The initial point of the inquiry is the law of 1873, and the charter of the Irving Manufacturing Company. Bonds were issued under that law, and carry notice of that fact upon their face. Of course, a purchaser takes with notice of everything appearing upon the face of the paper. And when a bond purports upon its face to be issued under the authority of a given law, if that law be unconstitutional every purchaser takes with notice of the invalidity of the bond. Upon this proposition all the courts agree. Some, among them this court, go further; (*Lewis v. Comm'rs of Bourbon Co.*, 12 Kas. 186.) There is therefore, in this case, no matter of estoppel arising in favor of *bona fide* holders, no question of the regularity of the proceedings under the law. The case hinges upon the constitutionality of the law. The law is a special one, and purports to authorize Blue Rapids township to take stock in and issue bonds to the Irving Manufacturing Company — nothing more and nothing less. The Irving Manufacturing Company was a private corporation then existing, with a charter duly filed in the office of the secretary of state, whose declared purpose was the securing of power and the building of manufactories. No special class of manufactories was named, nor was there any restriction as to the number, or number of classes. Under its charter, the company could put up mills for the manufac-

ture of woolen goods, or paper, or cotton cloth, or anything else. Building one mill in no manner exhausted its power, or restricted its line of labor. To a grist mill this year, it might add a paper mill next, and so each year add to the number, and the number of kinds of manufactories. Obviously, the design was to utilize the water power in building up a manufacturing town, and no limitation was intended on the kind of manufactories. Is this a purpose which can be aided by taxation? We are clearly of opinion that it cannot. It is a private corporation which is sought to be aided; it is a private benefit which is sought to be secured. Obviously, the purpose was a private, and not a public one. Judge Cooley says, in his work on Taxation (p. 78): "The right to exercise the power of taxation in aid of manufacturing enterprises of private persons or corporations, has seldom been asserted, and whenever asserted, has been most emphatically denied." In *Allen v. Inhabitants of Jay*, 60 Me. 124, (12 Am. Law Reg., N. S., 481, with note by Judge Redfield,) the inhabitants proposed under legislative authority to loan the credit of the town by issuing bonds to Hutchins & Lane, on condition that they should move their saw mill and box factory from Livermore Falls to Jay Bridge, and also put in operation one run of stones for grinding meal; but the court decided that "such an object is entirely a private one, and in no sense entitled to be called a public use of such a character as to justify the imposition of taxes upon the inhabitants and property of a town by the vote of a majority of such town." No distinction is made in the decision between the saw mill and box factory, and the mill for grinding meal. If the latter had stood alone, however, it may be that under the decision in *Township of Burlington v. Beasley*, 4 Otto, 312, aid might have been lawfully extended to it; but this would depend on the kind or character of the mill, and the statutes of Maine relating to the subject. In *Commercial National Bank v. City of Iola*, 2 Dillon's Ct. Ct. Rep. 353, (9 Kas. 689,) bonds were issued by the city by authority of an ordinance afterward legalized by the legislature, so far as it could do so, as a donation "to

aid in the erection or completion of buildings at or near the city of Iola, to be used for the purpose of manufacturing Z. King's patent bridges, and as a foundry and iron works." In an action to recover interest due on coupons attached to these bonds, it was held that the purpose in aid of which the bonds were issued was private, and not public in its nature, and that they were void — "void from the beginning, and void into whosesoever hands they may have come." In *Loan Association v. City of Topeka*, 3 Dillon's Ct. Ct. Rep. 376, (20 Wall. 655,) bonds had been issued to the King Wrought-Iron Bridge Manufactory and Iron Works Company of Topeka, to aid and encourage it in establishing and operating its manufactory of iron bridges in said city, in pursuance of two general acts of the legislature, referred to by title on the face of the bonds. But the court adhered to the decision in the Iola case, and held the bonds void, and the judgment was affirmed by the supreme court of the United States, which decided that a statute which authorized a town to issue its bonds in aid of the manufacturing enterprises of individuals is void. (*Lowell v. City of Boston*, 111 Mass. 454; *The State v. Osawkee Township*, 14 Kas. 418; *McConnell v. Hamm*, 16 Kas. 228.)

The general truth of these propositions is not seriously controverted by counsel for defendant in error, but they seek to take this case out of the scope of those rules. They contend that neither the act nor the bonds show that the purpose was a private one; that they only show that the purpose was to aid the Irving Manufacturing Company; that the bonds have passed into the hands of *bona fide* holders, and that such holders have a right to presume that the legislature has passed no unconstitutional law, and that therefore the purposes for which the Irving Manufacturing Company was organized were public. They say: "All the cases cited by counsel show that, either by an act of a legislature, or an ordinance made by a city council, the cities or townships voted bonds for private purposes, and that the different private enterprises were so expressed in the statute or ordinance. In this

case, you nowhere find in the statute of 1873, nor in said bonds, that said bonds were voted for private purposes; but the statute, bonds, pleadings and evidence show without a doubt that the bonds were voted for public purposes. This state of facts, therefore, brings us within the case of the *Township of Burlington v. Beasley*, 4 Otto, p. 312." They also contend, that notwithstanding the generality of statement in the charter of the purposes for which the company was organized, by contract before the issue of the bonds, and before any subscription or vote, provision had been made for the building of a dam and grist mill; that these are all that in fact have as yet been built; that a grist mill is a public mill, and that therefore it was plainly the intention of Blue Rapids township and the company that public aid should be granted only for the building of a dam and mill for public purposes. They further claim, that even if the act of 1873 be unconstitutional, the validity of the bonds can be sustained under the general bond law of 1872.

We cannot concur with counsel in these views. We think that where a law purports to authorize the issue of bonds to any given party, a purchaser must take notice of any inherent incapacity of such party to receive public aid. Where the proposed recipient is a corporation, its charter powers are as much a matter of public record as the law which is invoked to uphold the bonds, and a purchaser is as chargeable with notice of those powers as of the law. If the rule were otherwise, the bond question would be freighted with more of peril than even now it carries. If a law purporting to authorize the issue of municipal bonds to a private individual, or to a private corporation, must be adjudged constitutional, unless it affirmatively appears upon the face of the law that the bonds are to be issued to subserve some private purpose, there would be but slight protection against foisting the wildest schemes of private enterprise upon the shoulders of the public. Not so do we understand the rule. Upon the face of the law and the record must it appear that a public purpose is to be subserved, or the law will not stand. If the law does not ex-

48—23 KAS.

press the very purpose, then the proposed grant must be to a corporation whose sole capacity is to subserve some public purpose. The law, as a law, must be valid before any acts under it can be upheld. A corporation may sometimes be estopped from showing its own wrongful acts done under a valid law, but there is no such thing as a void enactment being made valid by estoppel. If the law simply purports to grant authority to issue bonds to a specific party, and such party has not capacity to receive public aid, then the law fails, and no purchaser can plead ignorance of such party's incapacity. The law never had any validity, and no acts done under it can infuse life into it, or create any estoppel upon the municipality.

Now the Irving Manufacturing Company was chartered, as we have seen, for manufacturing purposes generally. The law authorizing a subscription to its stock contemplated aid to those general purposes. It placed no restriction on the use or disposition by it of the bonds. It might use them to build a grist mill, as it did, or a paper mill, as it may yet do. Doubtless a law may be valid in part and void in part, and a law authorizing the issue of bonds for two separate objects may be upheld as to one while it fails as to the other. Perhaps, also, a law authorizing the issue of bonds for general purposes, such as "internal improvements," may sustain an issue in certain cases, and where the improvements are of a public character, when it would not in other cases, and where the improvements are simply of a private nature. And in such a case, if bonds are issued, simply reciting the law, and pass into the hands of *bona fide* holders, there may be a presumption that they were issued for a purpose which is legal, and an estoppel on the municipality to deny the fact. To that extent, as we understand it, goes the case of the *Township of Burlington v. Beasley*, 4 Otto, 312. In that case, Mr. Justice Hunt, speaking for the court, says:

"The bonds which are the foundation of this action, purport upon their face to be issued by virtue of an act of the legislature of the state of Kansas, approved March 2, 1872,

which title is given in the bonds. They contain no specific statement of the purpose for which they were issued. There is nothing upon their face to indicate fraud, unlawful authority, assumption of authority, or irregularity. If there was in law any authority in the town, under any circumstances, to issue its bonds, and if these bonds have the impress of such authority, there is nothing to vitiate them when taken by *bona fide* holders."

But where the law names only one specific purpose, the aiding of a named corporation, the law is good or bad as a whole, according as such corporation may or may not receive public aid. The use which the corporation may make of the bonds neither upholds nor destroys the law. If bonds were issued to an insurance corporation under a law purporting to authorize such an issue, the law would not be made good and the bonds valid by the fact that the insurance company used them in building a railroad, or both be vitiated because the latter were used in the insurance business. The law is good or bad, constitutional or not, at the time it is signed and approved. Where the charter of a corporation is broad and general, enabling it to engage in several industries, the fact that one of those industries may be of such a public character as to justify public aid, will not uphold a law authorizing public aid generally to the corporation. Public aid to private purposes cannot be secured by yoking them to a public purpose. And where the public and private purposes are attempted to be aided by a single concession, the latter vitiate, rather than the former uphold the grant. " The entire purpose, or if there are several, and no rule of apportionment as to the application of the proceeds, then all the purposes, must be public. In other words, the legislature cannot validate bonds for private purposes, by declaring that the authorities may apply an indefinite portion of the proceeds to some public purpose." (*The State, ex rel., v. Osawkee Township*, 14 Kas. 418.) In *Attorney General v. City of Eau Claire*, 37 Wis. 400, 437, it is said: " It seems too plain for discussion, that if the legislature grants an equivocal power, subject to the election of the grantee for either one or the other of two pur-

poses, the one lawful and the other unlawful, the power cannot be upheld upon the chance of its being lawfully applied. . . . When the purpose of such a statute is double, each purpose must be valid to sustain the power."

Here, the law makes no provision for aid to any separate public purpose. Any appropriation would be at the election of the company—an election which it could change at pleasure. It seems to us, therefore, that the law was in its inception unconstitutional, and that no acts done under it are of any validity or create any estoppel. Every holder of the bonds is chargeable with notice of the law, and all matters affecting its constitutionality. So far as the general bond law of 1872 is concerned, the bonds do not purport to have been issued under that law. They specifically refer to the law of 1873 as the source of their authority. They do not comply in all respects with the law of 1872, and while, if they purported to be issued under that law, the departure might not be sufficient to vitiate the bonds, they cannot rest upon any presumptions which might then exist in their favor in the hands of *bona fide* holders. The purchaser is referred to one statute. If he would support the bond by some other law, he must show as a fact compliance with that law, and may not rest upon presumptions; and as a matter of fact, the bonds were voted and issued to a corporation whose charter contemplated such private purposes as to preclude its reception of public aid.

The judgment of the district court will be reversed, and the case remanded with instructions to render judgment on the findings in favor of plaintiff in error, plaintiff below.

All the Justices concurring.