(99 N. W. 68.)

---

MABEL MANNING v. THE CITY OF DEVILS LAKE, A MUNICIPAL CORPORATION, AND S. L. WINEMAN AS MAYOR, AND T. A. HASLAM AS TREASURER, AND OLE SKRATASS AS AUDITOR.

Opinion filed January 20, 1904.

**Municipal Corporations — Validity of Its Contracts.**

1. The validity of a contract of a municipal corporation which can be performed only by a resort to taxation depends upon the power of such corporation to levy and collect a tax for that purpose.

**Can Construct Bridge Only on Legal Highway.**

2. The taxing power of a city cannot be lawfully invoked by it to raise funds to construct a bridge which is not located upon a street or highway having a legal existence.

**Tax Cannot be Levied for Purely Private Objects.**

3. The taxing power of a city corporation can be exercised only for corporate purposes. The construction and maintenance of a bridge outside of its territorial boundaries, the purpose of which is not to serve the convenience of its inhabitants, but the convenience of the inhabitants of an outlying district, and to promote the business and commercial interests of the city by increasing the trade of its business men, is not such a corporate purpose as will sustain the exercise of the power of taxation.

**Incidental and Indirect Benefits Insufficient.**

4. The incidental and indirect benefits which accrue to the inhabitants of a city from the development of its commercial interests will not sustain the power of taxation.

Appeal from District Court, Ramsey county; *Cowan, J.*

Action by Mabel Manning against city of Devils Lake and others. Judgment for plaintiff, and defendant appeals.

Affirmed.

*B. D. Townsend,* for appellants.

A municipality may establish and maintain public improvements outside of its territorial limits, where necessity requires them for

city purposes. People v. Kelly, 76 N. Y. 475; Callam v. City of Saginaw (Mich.), 14 N. W. 677; Lester v. City of Jackson, 69 Miss. 887; Chambers v. City of St. Louis, 29 Mo. 543; Newman v. Ashe, 68 Tenn. 380; Hackett v. City of Ottawa, 99 U. S. 86, 25 L. Ed. 363.

*John C. Adamson,* for respondent.

A municipal corporation has no power to make gifts of property or money. The building of the bridge in question was an attempted donation of public funds for the benefit of individuals. Constitution of N. D. 185.

The question is not one of enforcing police regulation, or of public health, or of finding outlets for sewer. Section 130 of the constitution directs the legislature to provide by law for the organization of municipal corporations and restrict their powers as to levying taxes, contracting debts, etc. This has been done by subdivision 2 of section 2148, Political Code, wherein the city council must confine its appropriation of money to corporate purposes; and this clearly prohibits lending of the credit of a city or gifts of its money to any project outside of its corporate limits, irrespective of benefits that its inhabitants might derive from such an expenditure.

If the right to use a corporate power is in doubt, the power is denied. Van Antwerp v. Dells Rapids Township, 53 N. W. 82; Minturn v. LaRue, 23 Howard 435, 16 L. Ed. 574; Hanger v. City of Des Moines, 2 N. W. 1105; Dill Mun. Corp. (4th Ed.) 89.

YOUNG, C. J.  The defendants appeal from an order of the district court of Ramsey county continuing a temporary injunction, made upon an order to show cause. The action in aid of which the restraining order was issued is brought for the purpose of permanently enjoining the defendants from issuing and negotiating certain bonds which it proposes to issue for the purpose of constructing and maintaining a certain road or bridge across an arm of Devils Lake. The plaintiff alleges in her complaint that she is a resident, property owner and taxpayer in the city of Devils Lake; that said city is a municipal corporation organized under the laws of this state; that, at a city election called for that purpose, a majority of the electors voted to issue bonds of said city, in the sum of $6,500, for the purpose of paying the cost of construction and maintenance of a certain bridge, known as the "Pelican Point Bridge,"

and for paying outstanding warrants of the city of Devils Lake, issued in aid of such purpose; that the defendant Ole Skratass, the auditor of said city, has advertised for bids for said bonds; that said Pelican Point Bridge is located several miles outside of the corporate limits of said city; that the acts of the defendant and its officers in attempting to issue and dispose of said bonds for the purpose aforesaid are ultra vires and wholly void. The complaint further alleges that the officers of said city have issued a large number of city warrants, to wit, in the sum of at least $6,000, to aid in the construction of said bridge, and that the same are unpaid, and are about to issue other warrants and expend the moneys of the corporation for said purpose, and prays that defendants be restrained and enjoined from disposing of and issuing said bonds, and from diverting any funds of the corporation to said purpose, and from paying the outstanding warrants. Upon the foregoing complaint and upon plaintiff's affidavit a temporary restraining order was issued, together with an order to show cause why defendants should not be restrained from negotiating said bonds and paying said warrants during the pendency of the action. At the hearing of the order to show cause the defendants filed a number of affidavits setting forth the importance of the object of the proposed expenditure to the business interests of the city of Devils Lake. The court made an order that the temporary restraining order theretofore issued be continued until the final determination of the action. From this order the defendants appeal.

We are of opinion that the trial court did not err in refusing to vacate the restraining order. The question involved is one entirely of corporate power. The facts are not in dispute. From the statement of facts prefixed to appellant's brief, it appears that the so-called Pelican Point Bridge is situated in Lake township, between four and five miles southwest of, and outside of the corporate limits of, the city of Devils Lake, and consists of an embankment of earth and stone, connecting the north and south shores of Devils Lake at its narrowest point. In the center, where the water is deepest, there is a pontoon bridge or barge, about 100 feet in length, connecting the embankments. The affidavits show that the construction of the so-called bridge was commenced in the spring of 1900 by the business men of the city of Devils Lake, acting through a citizens' committee, and that a large sum of

money was raised by private subscription and expended upon its construction. The land on the north side of the lake belongs to the state military reservation, and by chapter 134, p. 173, Laws 1901, the legislature granted the right to locate a highway thereon, and a highway was located by the township of Lake, in which said military reservation is situated, connecting the embankments with the public highways leading to the city of Devils Lake. The land on the south side is included in the Ft. Totten Indian reservation. The affidavits state that the city of Devils Lake acquired a right of way over the tract of land abutting on the south side from the allottee Indian owning the same, with the consent of the United States government. The road, as constructed by the citizens' committee, aside from the pontoon bridge in the center, extended about three feet above the surface of the water. Since 1901 the waters of Devils Lake have risen about thirty-eight inches, necessitating the raising of the embankments. Some $12,-000 have been expended. The expenditures now proposed are necessary to put the road in permanent and safe condition. The affidavits filed by the defendants show that there is a large territory south of the city of Devils Lake, and a large number of people tributary, who will do their trading at that city if the bridge is constructed and maintained; that "the amount of increased trade and business brought to the city of Devils Lake during the time said highway was passable in the summer of 1901 * * * aggregated an average of approximately two hundred fifty dollars a day; that said increased business was general in character, and a direct benefit to all engaged in business in said city of Devils Lake at said time." The affidavits also show that there are more than 1,000 allottee Indians residing on the Ft. Totten Indian reservation, on the south side of the lake, who are largely engaged in agricultural pursuits, and who will do their trading at the city of Devils Lake, providing the highway in question is maintained; that there are a large number of persons in "the Cheyenne River country" who are "naturally tributary to the city of Devils Lake," and who would "market their wood and purchase their supplies at Devils Lake if the bridge were maintained;" that there are a large number of instructors in the industrial school on the Indian reservation; that said school consumes a vast amount of all kinds of merchandise and supplies, a large portion of which would be purchased at said city if said highway is opened for travel; that there is

approximately 100,000 acres of unoccupied and unallotted land on the Indian reservation, which it is proposed to open to settlers, and that this, when occupied and cultivated, will increase the commercial importance of the city of Devils Lake if said highway is maintained; that the completion and maintenance of said highway communicating with the land south of Devils Lake "will greatly increase the amount of marketing and trading done at said city of Devils Lake, and otherwise greatly improve and extend its commercial relations." It is also stated that "the construction, completion and maintenance of said highway known as 'Pelican Point Bridge' is a commercial necessity to said city, and that it will greatly extend the commercial importance and trade relations of the said city; that it will greatly increase the amount of grain marketed in said city, and very materially increase and extend the territory tributary to the said city of Devils Lake, and will be a direct benefit, to a very appreciable extent, to every merchant, property owner, taxpayer and resident of said city."

There are two sufficient reasons why the proposed expenditure is illegal. It must be conceded that the validity of the bonds and warrants in question cannot be sustained unless the city has power to provide for their payment by taxation. It has been properly said that "the issue of bonds by a city, whatever provision may be made for their redemption, involves the possible, and not improbable, consequence of the necessity to provide for their payment by the city. The right to incur the obligation implies the right to raise money by taxation for payment of the bonds, or, what is equivalent, the right to levy a tax for the purposes for which the fund is to be raised by means of the bonds so authorized." Lowell v. Boston, 111 Mass. 454, 15 Am. Rep. 39. The validity of a contract of a municipal corporation which can only be fulfilled by resort to taxation depends on the power to levy a tax for that purpose. Savings & Loan Ass'n v. Topeka, 20 Wall. 655, 87 U. S. 655, 22 L. Ed. 455; Sharpless v. Mayor, 21 Pa. 147, 167, 59 Am. Dec. 759; Hanson v. Vernon, 27 Iowa, 28, 1 Am. Rep. 215; Allen v. Inhab. of J., 60 Me. 127, 11 Am. Rep. 185; Whiting v. Fond du Lac, 25 Wis. 188, 3 Am. Rep. 30. It is proposed to expend funds derived from a sale of these bonds upon a road or bridge which is not a legal highway. Such an expenditure will not authorize the imposition of a tax. "It has been decided that an assessment for making and opening a road, where no road has in fact

been laid out, and where consequently the land is the subject of private ownership, and no highway would exist when the money was expended, would be illegal and void." 1 Cooley on Tax'n (3d Ed.) 216; Philbrook v. Kennebec, 17 Me. 196; People v. Saginaw Supervisors, 26 Mich. 22; Pacific Bridge Co. v. Kirkham, 54 Cal. 558; Snyder v. Foster, 77 Iowa 638, 42 N. W. 506. See, also, Coates v. Campbell, 37 Minn. 498, 35 N. W. 366. Bridges constitute a part of the public highway. Section 1091, Rev. Codes. Section 1053, Rev. Codes, which is a part of chapter 17 of the Political Code of 1899, commits the power to open highways outside of the limits of incorporated cities, villages or towns, "all proceedings relative thereto," and "all matters connected therewith," to the board of county commissioners or board of township supervisors. Section 1114, Rev. Codes 1899, charges township supervisors with the care and supervision of roads and bridges within their respective townships. It is not claimed that the county commissioners of Ramsey county, or the supervisors of Lake township, in which the "bridge" is situated, have taken any action whatever either to locate it or recognize it as a highway. It has not acquired a legal character as a public highway by use, under section 1050, Rev. Codes 1899, and there is no pretence that it was laid out and established as a highway under chapter 17, of the Political Code of 1899. On the contrary, it was constructed, as we have seen, by private individuals and by private subscription. The duty of maintaining and keeping in repair a public highway, regularly established (that is, a legal highway), may be enforced, and the public interests thereby protected. See 2 Cooley on Tax'n (3d Ed.) 1293, and cases cited. The construction of this road imposed no such obligation upon the individuals who constructed it, or upon the county or township in which it is situated. In short, there exists no duty to maintain and keep it in repair which the public can enforce. Travis v. Skinner, 72 Mich. 152, 40 N. W. 234; Anthony v. Inhab. of Adams, 42 Mass. 284; City of Goshen v. Myers, 119 Ind. 196, 21 N. E. 657; Board v. Township, 121 Ind. 379, 23 N. E. 257; Houfe v. Town, 34 Wis. 608, 17 Am. Rep. 463; State v. Supervisors, 41 Wis. 28. If, therefore, no other objection existed than that just considered, it alone would be sufficient to render the proposed expenditure illegal.

But aside from the fact that it is proposed to expend funds derived by local taxation upon a bridge which is not located upon a

legal highway, the proposed expenditure is illegal for another reason. It is not for a corporate use or purpose, but is, on the contrary, for private benefit. The doctrine of the cases on this point is stated in 2 Dillon on Munic. Corp. (4th Ed.) section 736 (587), as follows: "The taxing power of the state consists in its authority to levy and collect taxes and assessments, which are in the nature of special taxes. Taxes (including in the term assessments) are burdens or charges imposed by the legislature, or under its authority, upon persons and property, to raise money for public, as distinguished from private purposes, or to accomplish some end or object public in its nature. There can be no legitimate taxation to raise money, unless it be destined for the uses and benefit of the government, or some of its municipalities or divisions invested with the power of auxiliary or local administration. A public use or purpose is of the essence of the tax." Again, it is said in 2 Beach on Pub. Corp., section 1440, that "municipal taxation must be for local purposes only, and for a public use, and the rule of strict construction should always be applied." The development of the commerce or trade of a city is not a corporate purpose. Instances are numerous where cities have attempted to promote their commercial importance by aiding manufacturing and industrial enterprises through the aid of local taxation, and in every instance the attempted exercise of power, when called in question, has been condemned as unlawful. To bring any particular object within the description of a corporate purpose, "it must appear to be money necessary to the execution of some corporate power, the enjoyment of some corporate right, or the performance of some corporate duty, as established by law or by long usage." Spaulding v. Lowell, 40 Mass. 71. "Municipal corporations possess only a limited right to bind themselves and the inhabitants and property within their respective limits by civil contracts. Their contracts will be valid when made in relation to objects concerning which they have a duty to perform, an interest to protect, and a right to defend; but here is the extent at once of their right and their power. They cannot engage in enterprises foreign to the purpose for which they were incorporated, nor assume responsibilities which involve undertakings not within the compass of their corporate powers." Vincent v. Inhab. of Nantucket, 66 Mass. 103. Neither will they be bound by the express vote of the majority to the performance of contracts or other legal duties not coming within the scope of the

objects and purposes for which they are incorporated. Anthony v. Adams, 1 Metc. (Mass.) 284. In Ottawa v. Cary, 108 U. S. 110, 2 Sup. Ct. 361, 27 L. Ed. 669, it was said that the power to govern a city does not imply power to expend the public money to make the water in the rivers available for manufacturing purposes. "The charter confers all the powers usually granted to a city for the purposes of local government, but that has never been supposed, of itself, to authorize taxes for everything which, in the opinion of the city authorities, would promote the general prosperity and welfare of the municipality. Undoubtedly, development of the water power of the streams that traverse the city would add to the commerce and growth of the citizens. But certainly power to govern the city does not imply power to expend the public money to make the water in the rivers available for manufacturing purposes. * * *" In 1 Cooley on Tax'n (3d Ed.) 206, it is said that: "However important it may be to the community that individual citizens should prosper in their industrial enterprises, it is not the business of government to aid them with its means. Enlightened states, while giving all necessary protection to their citizens, will leave every man to depend for his success and prosperity in business on his own exertions, in the belief that by doing so his own industry will be more certainly enlisted, and his prosperity and happiness more probably secured. It may therefore be safely asserted that taxation for the purpose of raising money from the public, to be given or even loaned to private persons, in order that they may use it in their individual business enterprises, is not recognized as an employment of the power for a public use. In contemplation of law, it would be taking the common property of the whole community and handing it over to private parties for their private gain, and consequently unlawful. Any incidental benefits to the public that might flow from it could not support it as legitimate taxation." See, also, cases cited at note 1.

It may be safely stated that no case can be found sustaining an expenditure by a city, as for a corporate use and purpose, when the principal object of the expenditure is to promote the trade and business interests of the city, and the benefit to the inhabitants is merely indirect and incidental. The cases condemning such efforts are almost numberless. In 1872 the business and manufacturing district of Boston was destroyed by fire. The legis-

lature of Massachusetts, called in special session for that purpose, passed an act authorizing the city of Boston to issue bonds to the amount of $20,000,000 to render aid in the way of loans in rebuilding the burned district.   In a well-reasoned opinion, the soundness of which has never been questioned, but always approved, the Supreme Court of that state held that the proposed expenditure was not for a public use or purpose, and would not sustain the power of taxation, and that the act was unconstitutional and void.   We quote at length from the very lucid opinion in that case: "The power to levy taxes is founded on the right, duty and responsibility to maintain and administer all the governmental functions of the state, and to provide for the public welfare.   To justify any exercise of the power requires that the expenditure which it is intended to meet shall be for some public service, or some object which concerns the public welfare.   The promotion of the interests of individuals, either in respect of property or business, although it may result incidentally in the advancement of the public welfare, is, in its essential character, a private, and not a public, object.   However certain and great the resulting good to the general public, it does not, by reason of its comparative importance, cease to be incidental.   The incidental advantage to the public or to the state which results from the promotion of private interests and the prosperity of private enterprises or business does not justify their aid by the use of public money raised by taxation, or for which taxation may become necessary.   It is the essential character of the direct object of the expenditure which must determine its validity, as justifying a tax, and not the magnitude of the interests to be affected, nor the degree to which the general advantage of the community, and thus the public welfare, may be ultimately benefited by their promotion. *   *   *   The power of the government, thus constituted, to affect the individual in his private rights of property, whether by exacting contributions to the general means, or by sequestration of specific property, is confined, by obvious implication as well as by express terms, to purposes and objects alone which the government was established to promote, to wit, public uses and the public service.   This power, when exercised in one form, is taxation; in the other, is designated as the right of eminent domain.   The two are diverse in respect of the occasion and mode of exercise, but identical in their source, to wit, the necessities of

organized society, and in the end by which alone the exercise of either can be justified, to wit, some public service or use. It is due to their identity in these respects that the two powers, otherwise so unlike, are associated together in the same article. So far as it concerns the question what constitutes public use or service that will justify the exercise of these sovereign powers over private rights of property, which is the main question now to be solved, this identity renders it unnecessary to distinguish between the two forms of exercise, as the same tests must apply to and control in each. An appropriation of money raised by taxation, or of property taken by right of eminent domain, by way of gift to an individual for his own private uses exclusively, would clearly be an excess of legislative power. The individual, by reason of his capacity, enterprise or situation, might be enabled to employ the money or property thus conferred upon him in such a manner as to furnish employment to great numbers of the community, to give a needed impulse to business of various kinds, and thus promote the general prosperity and welfare. In this view, it might be shown to be for the public good to take from the unenterprising and thriftless their unemployed capital, and intrust it to others who will use it to better advantage for the interests of the community. But it needs no argument to show that such an arbitrary exercise of power would be a violation of the constitutional rights of those from whom the money or property was taken, and an unjustifiable usurpation." See, also, Whiting v. Sheboygan R. Co., 25 Wis. 167, 3 Am. Rep. 30; 1 Dillon on Munic. Corp. (4th Ed.) section 159, and cases cited; also State v. Township of Osawkee, 14 Kan. 419, 19 Am. Rep. 99; Central Branch U. P. R. Co. v. Smith, 23 Kan. 745; Clark v. City of Des Moines, 19 Iowa 199, 87 Am. Dec. 423; and particularly Town v. Watson et al., 33 Ark. 704.

The facts of this case bring it within the principle of the cases to which we have just referred. The proposed expenditure is not for a bridge upon the streets of the city, nor at or near its boundaries, for the convenience of its inhabitants. On the contrary, the "bridge" in question is almost five miles from the city limits, and is neither a necessity, nor even a convenience, to the inhabitants of the city for traveling purposes. Its utility and avowed purpose is to provide the inhabitants of an outlying and remote district lying south of the lake with a convenient mode of reaching

the city of Devils Lake to do their trading, and thereby increase the trade of the merchants and business men of the city. The direct purpose of the expenditure is. for the benefit of those who will travel the road, and the business men who will profit by their trade. The benefit which will accrue to the inhabitants of the city is merely incidental and indirect. As has already been pointed out, such benefits do not constitute a public purpose for which a tax may be imposed. The expenditure is essentially for a private purpose. For this reason, and independent of all other consideration, the bonds in question are unauthorized and void.

In reaching this conclusion, we do not unqualifiedly assent to the contention of plaintiff's counsel that the boundaries of a city mark the limits of the lawful exercise of its corporate power, and that there can be no expenditure for a corporate purpose, the object of which is located outside of its boundaries. For obvious reasons, the exercise of its political and governmental powers is restricted by its boundaries. But in the exercise of other corporate functions, which affect the health, safety and convenience of its inhabitants, and may be said to be of a private nature, the reason for the limitation which rests upon the exercise of its governmental and political power does not exist. For this reason it has been generally held that a city can expend corporate funds for parks, drains, sewers, waterworks, breakwaters, pesthouses and cemeteries. It has also been held that they may construct bridges at or immediately outside of their boundaries, when necessary to serve the convenience of their inhabitants. Such was the holding in the Brooklyn Bridge Case (People v. Kelly, 76 N. Y. 475), and for the same reasons the right has been sustained in numerous other cases. The power of a city corporation to exercise functions of a private nature outside of its limits is recognized to some extent by the statute in enumerating the powers of city councils. See subdivisions 7 and 60, section 2148, and section 2503, Rev. Codes 1899. But as already stated, the "bridge" here in question cannot be said to be a convenience to the inhabitants of the city of Devils Lake. The proposed expenditure cannot, therefore, be sustained as for a corporate purpose.

The order appealed from will be affirmed. All concur.