## TOWN OF BUYCK v. HIPPOLEIT BUYCK.[1]

### July 29, 1910.

### Nos. 16,681—(221).

**Payment of illegal claims — liability of town treasurer.**

A town treasurer, who pays out the money of his town upon orders issued in payment of illegal claims, presented to and allowed by the town board, knowing all the facts disclosing the illegality of the claims, is liable in an action by the town for a return of the money, notwithstanding the fact that the orders may have been fair on their face.

**Expenditure in violation of law.**

The supervisors of a town, of which defendant was treasurer, and with his full knowledge, co-operation, and assistance, entered upon an elaborate plan for the construction of a public road at a point where no highway had ever been, legally or otherwise, laid out, established a laborers' camp, which they supplied with tools and implements suitable for the purpose, provisioned the camp with necessaries for both laborers and their teams, employed themselves to perform work upon the road at a specified compensation, hired the town clerk as timekeeper at a fixed per diem and board, designated the town treasurer as purchasing agent of the town, who, as such, purchased for the town goods and property used and employed

[1]Reported in 127 N. W. 452.

at the camp. It is *held* that the acts of the supervisors were not only unauthorized by law, but in violation thereof, and that town orders issued in payment of obligations thus incurred were illegal.

**No estoppel against plaintiff town.**

There existed no highway at the place where the work was performed. The town received no benefit from the expenditures mentioned, and is not estopped from demanding a return of the money from the treasurer, who, with knowledge of all the facts, and an active participant in the unlawful transactions, paid the same out upon the unauthorized town orders.

Action in the district court for St. Louis county to recover $26,-826.86, money alleged to have been fraudulently paid out by defendant as treasurer of plaintiff town. The facts are stated in the opinion. In his answer defendant alleged that he safely left all of the moneys of plaintiff town received by him as treasurer, paid out therefrom only such sums and in such amounts as were drawn from the treasury of said township by the duly authorized officers of the town, which payments were made by defendant only on orders duly drawn, signed and countersigned by said officers, and all the remainder of the money so received by him as such treasurer, defendant paid to his successor in office, and that defendant faithfully performed all the duties of treasurer during the time he held said office. The case was tried before Cant, J., who directed a verdict in favor of plaintiff for $9,161.95. From an order denying defendant's motion to set aside the verdict and for a new trial, he appealed. Affirmed.

*W. G. Bonham* and *Alexander Marshall,* for appellant.

*Arnold & Pickering* and *Baldwin, Baldwin & Dancer,* for respondent.

BROWN, J.

Action to recover money alleged to have been fraudulently and unlawfully paid out by the defendant, treasurer of plaintiff town. A verdict was directed for plaintiff in the court below, and defendant appealed from an order denying a new trial.

A brief statement of some of the controlling facts will give an understanding of the nature of the action, and the foundation of the directed verdict in the court below.

The town of Buyck is composed of several congressional townships in the northern part of St. Louis county, and was organized under the statutes some time in the fall of 1906. The territory, though quite large, is sparsely settled, and at the time of the organization contained about twenty inhabitants. Officers were chosen, whether in the manner required by law is not important, and defendant was made the treasurer, and duly qualified as such. A board of supervisors, town clerk, justices of the peace, and two constables completed the roster of officers.

Subsequent to the completion of the organization, a proposition for the issuance of $22,000 of the bonds of the town was proposed, submitted to the voters, and adopted. Bids for the bonds were called for, and they were sold to an investment company at Duluth. The records made by the town clerk show that the bonds were disposed of by the town board to the investment company at par; but Buyck, as town treasurer, had previously made an arrangement with the company to pay them a bonus of $2,000 for taking the same. The first town order representing this amount of money was drawn by the town clerk and signed by the chairman of the board at the instance of Buyck, who delivered the same to the investment company at the time he received the amount due for the bonds, which was something less than $20,000. The purpose for which this money was raised was the construction of roads within the town for the convenience of the inhabitants. Upon the receipt of the money, steps were immediately taken looking toward the disbursement of the same, ostensibly for the purpose for which it was raised. No highways had, however, ever been laid out in the town, yet the officers thereof proceeded to construct a road for a distance of five miles, leading from the residence of the defendant and in the direction of the nearest railway point, some thirty-five miles away. Large expenditures were made in and about this work, and debts incurred in other respects for which the town was not legally chargeable; the total aggregating, with interest, $9,161.95.

Upon these facts, more fully detailed in the record and referred to later in the opinion, the town brought this action to recover the

money so paid out, on the ground that the claims were illegal and the payments unlawful.

The complaint alleges that the transactions referred to, including the organization of the town, bonding the same, and the pretended construction of a road therein, were the result of a scheme and plan inaugurated and controlled throughout by the defendant to defraud the town, and to unlawfully appropriate to the use of himself and friends in collusion with him the money of the town. It also alleges, and it fully appears from the record, that defendant had full and complete knowledge of all the proceedings by or before the town board and the purposes for which all orders paid by him were issued. The trial court, in directing a verdict, must have found these allegations to be true.

The record is very voluminous, and only a portion thereof was included in the paper book. We have examined the settled case, and reach the conclusion that the facts stated are conclusively established by the evidence. In fact, they are not seriously challenged by the defendant on this appeal. He presents for our consideration two principal questions, and contends (1) that, because the town received full value for the greater part of the money included within the directed verdict, in the form of a constructed road, and (2) because the money paid out by defendant as treasurer was in obeyance to town orders, fair on their face, the town cannot recover.

1. The contention that plaintiff having received full value for the greater part of the money sought to be recovered, and is therefore not entitled to recover, cannot be sustained.

The record is practically conclusive that the town in fact received nothing of value for the money paid out. It was expended in the construction of a public road where no highway had, legally or otherwise, been laid out. The town officers were trespassers in constructing the road, and they violated their official oaths in appropriating the money to this purpose. All that remains from their labors and the money so expended is an indifferent corduroy road for a distance of five miles over the lands of private owners leading from the residence of defendant. The town cannot now, without appropriate proceedings under the statute providing for the laying out of highways,

112 M.—7.

avail itself of the use of the road so constructed, or any part of it. The town, therefore, received nothing of value for its money.

The payment of the same was unlawful, and the rule invoked by defendant does not apply. Gray, Limitations of Taxing Powers, § 193; Manning v. City, 13 N. D. 47, 99 N. W. 51, 65 L.R.A. 187, 112 Am. St. 652; Thomson v. Town, 109 Wis. 589, 85 N. W. 425. Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L.R.A.(N.S.) 793, 120 Am. St. 621, is not in point. The only defect in the proceedings involved in that case was the failure of the city authorities to acquire the right to construct the sewer over a narrow strip of land across which it extended. Except as to this narrow strip, the city received full benefit of the sewer constructed, and, besides, the ultra vires character of that contract was attempted to be set up by a third person. The city made no complaint, and did not attempt to escape liability on that ground. Nor is the case of Moore v. County of Ramsey, 104 Minn. 30, 115 N. W. 750, in point. The substantial question in that case was the construction of a contract which the county had entered into, and the improvement there involved was with reference to a legally existing public thoroughfare.

2. The defendant's second contention, viz, that he was justified in paying the orders because they were fair on their face, cannot, on the facts presented in the record before us, be sustained.

A large number of the orders were not, in fact, fair on their face. They were not signed by the chairman of the town board, but by defendant's wife during the chairman's absence. The evidence also shows that many of the orders, to the knowledge of defendant, were not issued pursuant to the allowance of claims by the town board, but by the town clerk at defendant's request upon unverified statements of account filed by him against the town. The records of the town clerk show the allowance of all claims by the town board. The records, however, are clearly incorrect; for the evidence is conclusive that a majority of the supervisors were absent from the town at the time the record certifies that some of the claims were allowed. The orders signed by Mrs. Buyck were unquestionably unauthorized and wholly illegal. Nor were they made legal or binding upon the town by the subsequent act of the chairman in ratifying the act of Mrs.

Buyck in signing his name thereto, or by the previous authority giv-
en her to so act.  However, the chairman of the board expressly de-
nied authorizing her to sign his name; or that he ever ratified the
same on his return to town.

But it is clear that a public officer, charged with the performance
of official duties, cannot delegate his authority to a person not author-
ized by law to act, nor can he bind the public by any such authoriza-
tion, or by any attempt at ratification.  Harrison v. Ogden, 133 Iowa,
9, 110 N. W. 32; Chapman v. Limerick, 56 Me. 390; Mechem, Pub-
lic Officers, § 567; City v. McKean, 167 Ind. 249, 78 N. E. 982.
These orders were not, therefore, fair upon their face.  On the con-
trary, they were in contravention of the law to defendant's knowledge,
and no protection to him.  The court properly disposed of the ques-
tion of Mrs. Buyck's authority and the ratification of her acts as one
of law.

All other orders were perhaps fair upon their face, but were issued
in payment for claims for which the town was neither legally nor
equitably liable.

The record discloses, without dispute, that upon receipt of the
money from the issuance of the bonds the town officers, under the
guidance of defendant, entered upon an elaborate plan for the con-
struction of the road where none had been, legally or otherwise, laid
out.   They established a camp, supplied with all necessary equip-
ments for working the road, provisioned it with necessary supplies
for the comfort of the men employed and their teams, employed them-
selves to work upon the road, repaired machinery, hired the town
clerk to keep their time, paid for shoeing horses, and purchased mer-
chandise of various sorts, including "lice powder," sardines, and soap,
all of which was made a charge against the public treasury; and this
with the full knowledge and co-operation of defendant, who seemed
to have exercised a controlling influence over all the officers of the
town.   Defendant had full knowledge of the fact that he presented
unverified accounts and received orders in payment of the same.
He knew, also, that some of the claims had not been properly allowed,
because of the absence of a majority of the town supervisors.   He
knew that the town officers had contracted with themselves to work

upon the road, and he also knew that no public road had been laid, and that all orders here involved were in the main in discharge of debts incurred in these respects. Under such circumstances, it is clear, both on principle and authority, that defendant cannot shield himself on the plea that the orders were fair on their face.

The presentation of unverified accounts to the town, and the allowance thereof, conceding that they were allowed, was a violation of sections 438–441, R. L. 1905. The employment of members of the board of supervisors and the town clerk to work upon the road was a violation of section 688, R. L. 1905. The expenditure of money in the improvement of the road, and the purchase of supplies for the equipment of a laborers' camp, were equally unlawful and without authority. Defendant knew all these facts, and was chargeable with knowledge of the law (Ventura v. Clay, 114 Cal. 242, 46 Pac. 9), and that all the claims here involved were illegal and not valid obligations of the town. It was his duty, therefore, to refuse their payment. Bechtel v. Fry, 217 Pa. St. 591, 66 Atl. 992; Russell v. Tate, 52 Ark. 541, 13 S. W. 130, 7 L.R.A. 180, 20 Am. St. 193; 11 Cyc. 540, and cases cited. It is the duty of a public officer, charged with the custody and expenditure of the public money, to keep it safely and disburse it in accordance with law. For a failure to do so he is liable to the municipality he represents. 23 Am. & Eng. Enc. (2d ed.) 372; City of Chaska v. Hedman, 53 Minn. 525, 55 N. W. 737. It is no answer for him to say that, while he knew the facts, he did not know the law. To sustain a plea of that sort would open the door to public plunder.

We are not to be understood as holding that a public treasurer, who disburses public money on warrants, or orders, fair upon their face, in good faith, and without knowledge of the facts showing the illegality of the claims upon which the order or warrant purports to have been issued, may be made liable for a return of the money upon a showing that the claim was not in fact a legal charge against the municipality he represents. In such a case he would undoubtedly be protected. Sweet v. Commissioners of Carver County, 16 Minn. 96 (106). Such is not the case at bar. Defendant knew the facts and was instrumental in creating the illegal claims. Webster v.

Douglas, 102 Wis. 181, 77 N. W. 885, 78 N. W. 451, 72 Am. St. 870; County v. Lankershim, 100 Cal. 525, 35 Pac. 153, 556.

Nor is the question of his liability in any way controlled by the fact that a town board, in allowing claims, acts judicially. In whatever capacity they may act, defendant's knowledge of the facts and his participation therein expose him to liability. That defendant is liable for the misapplied money is settled by the decisions of this and other courts. Stone v. Bevans, 88 Minn. 127, 92 N. W. 520, 97 Am. St. 506; Bailey v. Strachan, 77 Minn. 526, 80 N. W. 694; Board v. Heaston, 144 Ind. 583, 41 N. E. 457, 43 N. E. 651, 55 Am. St. 192; Town of Martinsburg v. Butler, supra, page 1, 127 N. W. 420.

Order affirmed.